## UTLEY, Appellant, v. HILL et al.

### Division One, March 14, 1900.

1. **Practice: RULINGS ON EVIDENCE: CONCLUSIVE WHEN.** On appeal from a judgment sustaining some and overruling other exceptions to the report of a referee, where such report is based upon conflicting evidence, none of which is preserved in the bill of exceptions, the trial court's rulings upon the evidence are conclusive and will not be reviewed.

2. **Bank: RELATION TO DEPOSITORS.** The relation of a bank to its depositors is that of debtor and creditor. It is one of contract, not of trust.

3. ————: **RELATION OF DIRECTOR TO DEPOSITORS.** Ordinarily there is no relation either of contract or trust between the creditor of a bank and its directors.

Utley v. Hill.

4. **Insolvent Bank:** RECEIVING DEPOSITS: LIABILITY OF DIRECTORS: ESTOPPEL. In an action under 2760, R. S. 1889, by a depositor against the directors of a bank for assenting to the reception of deposits after said directors had knowledge that the bank was insolvent or in failing circumstances, *held*, that said directors were not liable unless they had actual knowledge. *Held*, also, that mere failure or neglect on their part to investigate the affairs of the bank, did not render them liable under the statute in question, nor estop them from pleading ignorance of the bank's condition.

5. ———: ———: ———: MEANING OF THE WORD "KNOWLEDGE." The "knowledge" which the law requires that a director shall have in order to render him liable under the statute in question, means a guilty knowledge, not an innocent, *bona fide* ignorance arising from neglect to keep posted.

6. ———: FALSE STATEMENT OF CONDITION: ACTION FOR DECEIT. The directors of an insolvent bank are not liable to a depositor in a common law action for deceit, on account of false statements of the bank's condition made to the Secretary of State.

7. **Penal Statute:** CONSTRUCTION. Where a statute creates a duty (such as requiring bank statements to be filed with the Secretary of State) and imposes a penalty for failure to perform it, the penalty so prescribed is exclusive.

8. **Reference:** FACTS FOUND BY REFEREE: COURT MAY DISREGARD. In cases where a compulsory reference may lawfully be directed, the trial court may pass upon the evidence reported by the referee, and find its own conclusions of fact, without regard to the findings of the referee.

Appeal from Saline Circuit Court.—*Hon. Richard Field,* Judge.

AFFIRMED.

*Leslie Orear* and *Alf F. Rector* for appellant.

(1) The finding of the referee in this case is a general finding and the law does not require the report of the referee to be in any particular form or that he shall incorporate special findings of fact with the general finding. R. S. 1889, sec. 2153. (2) The court erred in sustaining the exceptions to the referee's report marked 1, 3, 4 and 19, thereby erroneously

eliminating from consideration, in determining the liability of the defendants under the first count of the petition, the effects of negligent ignorance or that knowledge with which the performance of a duty imposed by law would clothe the defendants, and conclusively charge them with such knowledge. 3 Thomp. on Corp., sec. 4107; Delano v. Case, 121 Ill. 249; s. c., 17 Bradw. 531; Solomon v. Bates (N. C.), 24 S. E. 478; Tate v. Bates (N. C.), 24 S. E. 482; Baxter v. Coughlan (Minn.), 72 N. W. 797. (3) The court also erred in sustaining the third exception to the referee's report and holding thereby that the referee found as a matter of fact that the defendant directors did not have knowledge of the insolvency or failing circumstances of the bank but was simply put upon inquiry, or by the exercise of reasonable diligence might have obtained knowledge of the insolvency of the bank. One of the express statutory duties of the defendants is to know the solvency or insolvency of the bank. The duties prescribed by the Missouri Statute for bank directors are personal duties and by express provision of the statute the directors are thus brought into direct relationship to the depositors and creditors, and the directors are, as a matter of law, conclusively bound to know: First. Those things which are necessary for them to know in order to properly perform their duties. Second. Those things which a proper performance of their duties would bring to their knowledge shortly after their occurrence. State v. Sattley, 131 Mo. 464; Finn v. Brown, 142 U. S. 72; Martin v. Webb, 110 U. S. 7; Bank v. Wolfkuhler, 19 Kan. 66; Marshall v. Bank, 85 Va. 676; Williams v. McKay, 40 N. J. Eq. 203; Seale v. Baker, 70 Texas 283; Kitchen v. Railroad, 69 Mo. 265; Morgan v. Skiddy, 62 N. Y. 319; Gillett v. Phillips, 13 N. Y. 117; Feld v. Railroad, 123 Mo. 618; Brannon v. Loving, 82 Ky. 375. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. 3 Thomp. Corp., sec. 4108; Kitchen v. Railroad, 69 Mo. 265; Loring v. Groomer, 110 Mo.

641; Alcorn v. Railroad, 108 Mo. 92; Vaughn v. Tracey, 22 Mo. 420; Drey v. Doyle, 99 Mo. 466; Abbe v. Justus, 60 Mo. App. 308. (4) The statute referred to, defining the duties of bank directors, makes such directors the active agents of banking corporations in directing and managing the affairs of such banks and these duties can not be delegated by them to any other agency so as to permit them to escape the effects of the knowledge of such facts as the personal performance of those duties would disclose. If they commit the performance of their statutory duties to another then his knowledge, acquired by the performance of that duty, is their knowledge and they are chargeable with it to the same extent as if they were the actors. 3 Thomp. Corp., secs. 4107, 4108; Mechem on Agency, secs. 185, 186; 1 Morawetz, Corp., sec. 536; 1 Perry on Trusts, secs. 287 and 402; Thompson v. Greeley, 107 Mo. 590. (5) The statute makes the failure of the bank *prima facie* evidence of both assent and knowledge on the part of the directors and they may be estopped from denying knowledge on the same principle of law as would work an estoppel to deny any other fact. Knowledge may be fastened upon a party by reason of his relation to the facts and to the other party. Denial of knowledge in this case is confession of duty violated and is, therefore, a confession of liability. Those who accept the position of bank directors and assume to know enough to represent its solvency, hold the bank open for business, represent it to be solvent and thus induce others to deposit their money in the bank in reliance upon the performance of the duty enjoined upon them by law, are, when such others have lost by reason of such misplaced confidence through failure of the bank, estopped from setting up a want of knowledge of the bank's affairs and are estopped from setting up their own ignorance, carelessness, or incapacity or breach of duty. Seale v. Baker, 70 Texas, 290; Williams v. McKay, 40 N. J. Eq. 201; Jenet v. Nims (Colo.), 43 Pac. 148; Bigelow on Estoppel, sec. 538; 1 Morse on Banks, sec. 128;

3 Wait, Action and Defenses, 43; Kinkler v. Juraker, 19 S. W. 359; State v. Buck, 108 Mo. 622. (6) They can not say that they did not know what the law required them to do; they can not say that they were incapable of knowing what the law required; they can not say that they were negligent; they can not say they left everything to the cashier; all such so-called excuses do not excuse. Williams v. McKay, *supra*; Gordon v. Bruner, 49 Mo. 572; Railroad v. Alexander (Ky.), 27 S. W. 982; Oakley Bank v. Wilcox, 60 Cal. 133; Thompson v. Greeley, *supra*. (7) There is a manifest difference recognized by the authorities in charging a man with knowledge of facts, which a proper performance of a statutory duty imposes upon him, and cases where no such duty is involved. Abbe v. Justus, 60 Mo. App. 308; Rhodes v. Outcalp, 48 Mo. 367; Speck v. Riggin, 40 Mo. 405. (8) Where the defendants in an action for deceit are charged with the duty of knowing the condition of the banking corporation and managing its affairs, and are conscious of the fact that they have the means of knowledge at their command, publish such statements as to the financial condition of such corporation showing the same to be solvent without knowing whether such statements are true or false, but publish them as true as of their own knowledge when they were conscious of the fact that they had no knowledge on the subject, such statements, if false, and intended to be relied upon by the public, are fraudulent. Hamill v. Abell, 120 Mo. 188; Cooper v. Schlesinger, 111 U. S. 148; Brookes v. Hamilton, 15 Minn. 14; Hubbard v. Ware, 79 Ia. 678; Graves v. Bank, 10 Bush 23; Cooley on Torts, sec. 494; Bolles on Bank Officers, p. 48, sec. 87; Prewitt v. Trimble, 92 Ky. 180; Cook on Stock and Stockholders (2 Ed.), secs. 353 and 354; Cole v. Cassidy, 138 Mass. 437; Morse v. Swits, 19 How. Prac. Reps. 275; Cazeaux v. Mali, 25 Barb. 583; Meyers v. Amidon, 23 Hun 553; Litchfield v. Hutchinson, 117 Mass. 187; Fisher v. Mellen, 103 Mass. 506; Cen. R. R. Company v. Kish, Law Rep. Eng. & Irish App.

100; 2 Addison on Torts, sec. 1184; Solomon v. Bates, 24 S. E. Rep. 478; Caldwell v. Bates, 24 S. E. Rep. 481; Tate v. Bates, 24 S. E. Rep. 482; Seale v. Baker, 70 Tex. 283; Bigelow on Estoppel, sec. 538; Nevada Bank v. Portland National Bank, 59 Fed. Rep. 345; 3 Sutherland on Damages, secs. 587 and 588; Caldwell v. Henry, 76 Mo. 254. (9) The court in a law case must either accept or set aside altogether the finding of the fact made by the referee. The court can not substitute other findings of fact for those made by the referee and render judgment thereon. Lingenfelder v. Brewing Co., 103 Mo. 579; Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Berthold v. O'Hara, 121 Mo. 97; Voght v. Butler, 105 Mo. 479; McCreery v. Ellis, 60 Mo. App. 144.

*Thos. Shackelford, W. M. Williams, John A. Rich, Syd. B. Burks* and *D. D. Duggins* for respondents, except *Field*, administrator.

(1) The abstract of the record presented to this court by the appellant does not show that any exceptions were properly preserved to the rulings of the trial court, and hence only the record proper is here for review. (2) The findings of fact are not sufficient to sustain an action of deceit. It is not enough that statements in regard to the condition of a bank are published and that the directors by the exercise of ordinary care and diligence might have discovered that the bank was insolvent at the time that they were made. Pieratte v. Young, 49 S. W. Rep. 964. (3) The court did not err in refusing to consider declarations of law in this case as declarations were not proper. The report of the referee stands as a special verdict and declarations of law need not be given after the facts have been found. Ford v. Cameron, 19 Mo. App. 467; State v. Mackey, 55 Mo. 54; Henry v. Bell, 75 Mo. 199; Young v. Coleman, 43 Mo. 179. (4) The first count in plaintiff's petition is based upon the statute. Knowledge of

the insolvency, or failing condition of the bank, and assent to the creation of the indebtedness with such knowledge, are absolutely necessary to defendants' liability, under said statute. This is a highly penal statute, and nothing is to be taken by intendment. Negligence on the part of directors in the discharge of their duties will not supply the absence of a finding that they had knowledge of the insolvency or failing condition of the bank. The duty or opportunity to know does not constitute the cause of action given by the statute. Knowledge of the insolvency or failing condition is necessary to constitute the crime denounced by the Constitution and Statute, out of which this civil liability arises. Constitution of Missouri, art. 12, sec. 27; 1 R. S. 1889, sec. 3581; State v. Tomblyn, 48 Pac. Rep. 145; Patterson v. Minnesota Manf. Co., 4 L. R. A. 751; Deadrich v. Bank of Commerce, 45 S. W. Rep. 786; Minton v. Stahlman, 34 S. W. Rep. 222; Eads v. Orcutt, 2 Mo. App. 467; State v. Sattley, 131 Mo. 464; Fusz v. Spaunhorst, 67 Mo. 256; Fischer v. Tamm, 13 Mo. App. 110. (5) "It is one thing to say that knowledge may be inferred from facts and circumstances sufficient to put a person upon inquiry; but it is a different thing to say that such circumstances are, as a matter of law, knowledge." A finding of facts, from which knowledge might or might not be inferred, is vastly different from a finding that defendants had such knowledge. Van Raalte v. Harrington, 101 Mo. 601; State ex rel. v. Mason, 112 Mo. 380; Sammons v. O'Neill, 60 Mo. App. 537. (6) The circuit court properly held, that the referee did not find that defendant had knowledge of the insolvency of the bank at the time of the creation of the indebtedness to the plaintiff. The report nowhere states any such finding. Said report stands as a special verdict, and every fact upon which plaintiff's case depends must be affirmatively found to exist before plaintiff can be entitled to a judgment in his favor upon said report. The verdict or report of the referee must find all the facts from which the conclusion of law results, that

plaintiff is entitled to a judgment; otherwise he can not re-
cover.   Caldwell v. Stephens, 57 Mo. 589, 596; Carr v. Lewis
Coal Co., 96 Mo. 155; Gage v. Gates, 62 Mo. 412; Ozark
Land Co. v. Hayes, 150 Mo. 143; Meyer v. Amidon, 45
N. Y. 169; Duff v. Duff, 12 Pac. Rep. 581.   (7)   While a
general finding by the referee might have been sufficient, yet
in this case there was no such general finding.   The referee
states that he finds the facts alleged in the petition to be true
"except as herein otherwise indicated."   The report then
proceeds to set out special findings of fact, showing conclusively
that he could not have intended to find  that defendants had
knowledge of the insolvency of the bank at the time of the
creation of the indebtedness.   Having attempted to make a
special finding, it was necessary that he should state all the
facts essential to plaintiff's recovery before his conclusions of
law could be sustained.   Caldwell v. Stephens, 57 Mo. 589;
Meyer v. Amidon, 45 N. Y. 171.   (8)   The court below
properly held, as declared in its judgment, that the referee's
findings were to the effect "that the various statements of the
condition of said Citizens' Stock Bank, signed by the directors,
were made by them without any knowledge or information that
the same were untrue, but were made in the honest belief that
the said statements and representations of the condition of said
bank set out and referred to in the petition were true, and that
said statements and representations were made by defendants
in good faith, and in reliance upon the assurances of the cashier
of said bank, that it was always prospering, and in reliance
upon the facts furnished to them as to the financial condition
of said bank by the cashier in charge of its books."   The
plaintiff was not entitled to recover in an action for deceit upon
these facts.   Bank v. Byers, 139 Mo. 653; Derry v. Peake L.
R.,14 App. Cas. 374; Cowley v. Smythe, 46 N. Y. Law 380;
Foster v. Gibson, 38 S. W. 145; Trimble v. Reed, 31 S. W.
862; Pierat v. Young, 49 S. W. Rep. 965; Wakeman v. Dolly,
51 N. Y. 29; Koontz v. Kennedy, 41 N. W. 414; 1 Cook

on Corp. (4 Ed.), sec. 355; Bartholomew v. Bently, 15 Ohio 659; Dulany v. Rogers, 64 Mo. 204; Felix & Marston v. Shirey & Co., 60 Mo. App. 624; Koontz v. Kaufman, 31 Mo. App. 397. (9) The trial court undoubtedly had the right to set aside the report of the referee on the grounds that it was against the evidence. That court held, in terms, that the facts did not justify such a finding as the plaintiff now claims that the referee made. The report stands as a special verdict, and the trial court is vested with the power to set aside the report and find therefrom different conclusions of fact from those reported by said referee. Daly v. Timon, 47 Mo. 516; Caruth & Burns Hardware Co. v. Wolter, 91 Mo. 489; State ex rel. v. Hurlston, 92 Mo. 327; Wentzville Tobacco Co. v. Walker, 123 Mo. 671.

MARSHALL, J.—This is an action by a depositor in the Citizens' Stock Bank of Slater against the directors thereof to recover $8,000, lost by the failure of that bank. The petition is in two counts. The first count is predicated upon section 2760, Revised Statutes 1889, which makes directors of a bank individually responsible for deposits accepted, with their assent, after they had knowledge that the bank is insolvent or in failing circumstances. The second count is an action for deceit, charging that the plaintiff was induced to make such deposit by reason of false and fraudulent representations that the bank was solvent, such representations consisting of the reports made to the Secretary of State, as required by section 2752, Revised Statutes 1889. All other such misrepresentations were withdrawn at the trial, and are therefore no longer in this case. The answers are general denials. On motion of the plaintiff, and over the objection of the defendants, the case was sent to a referee, "to hear and try the issues."

The referee's report, omitting formal preliminary recitals, is as follows:

"In said cause I find the issues upon the pleadings and

evidence as follows: I find the issues in said cause, from the evidence, in favor of plaintiff; that is, I find the facts stated in the petition in both counts are true as therein alleged, except as herein otherwise indicated.

"I find especially the following facts: First, that one Joseph Field acted as cashier of the Citizens' Stock Bank of Slater, Mo., from 1882 until the assignment thereof, December 17, 1894; that during all that time he was elected at each annual election in December of each year a director of said bank, and was annually appointed cashier [here follows a finding as to the terms for which the defendants were elected directors, covering the periods involved in this case]; that defendant Hill was elected annually as president of said bank from the time of its organization, in September, 1882 (being elected annually by the board of directors), and that he continued to act as its president until the assignment of said bank. I further find from the evidence that the statements made to the said Secretary of State, and signed by said president and cashier, were attested as correct by defendants J. W. Field, R. B. Eubank and W. I. Garnett, by their signatures as directors to the one purporting to show the condition of said bank February 20, 1894, and referred to in evidence; that the statement in evidence made to said Secretary of State, and purporting to show the conditions of said bank June 2, 1894, was signed and attested by defendants P. C. Storts, R. B. Eubank, and W. I. Garnett as directors; that the statements in evidence made to said Secretary of State, showing the condition of said bank January 17, 1891, and May 16, 1891, were signed and attested by defendants Wm. I. Garnett, J. W. Field, and R. B. Eubank as attesting directors; that the statements to said Secretary of State in evidence, showing the condition of bank January 2, 1892, and May 16, 1892, were signed by the defendants Wm. I. Garnett and J. W. Field; that the statements in evidence to said Secretary of State showing the

condition of said bank October 31, 1892, and April 22, 1893, were signed by defendants Garnett, Eubank, and Field as attesting directors; that the statement in evidence showing the condition of said bank September 16, 1893, made to said Secretary of State, was signed by defendants Storts and R. B. Eubank; that at the time of signing said statements said defendants knew that the same would be published and were being published in the newspapers published and circulated in Slater where said bank was situated; that the statements aforesaid represented and showed said bank to be in a good and solvent condition, whereas, in fact, I find from the evidence that said bank was insolvent at the dates mentioned in said several statements, and had been insolvent from December, 1887, until its close, December 15, 1894; that said several defendants, when they signed said several statements, did so without any examination of the books, notes and securities claimed to be in the possession of said bank, and without knowing whether the statements contained therein as to the condition of said bank were true or not; that they severally signed said statements relying on said cashier's statement or representations that the same was true, and without knowing whether the same was true or not; that they signed said statements with the knowledge and expectation that the same would be published in the newspapers published and circulated among the people where the said bank was situated; that said statements were signed by said defendants without any order of the board of directors of said bank as such board; that said defendants signed said statements with full knowledge on their part that they had not examined the cash, notes or books showing the condition of said bank, and which purported to be in the possession of said bank. I find further from the evidence that the directors of said bank only held annual meetings, and then for the election of cashier and other officers; that these meetings were just after the annual election of directors by the stockholders; that they never at any

time required the cashier or any of the officers of said bank
to give any bond; that the reputation of said Joseph Field while
acting as cashier of said bank was that of a good business man,
as well as a man of integrity and wealth, up to the time of
said bank's assignment, and that defendants had knowledge
of and relied on said reputation of said cashier for integrity
and wealth. I further find from the evidence that during the
said time said defendants were acting as directors of said bank
they were frequently about the bank, and had access to the
books, papers, notes and securities belonging to said bank, and
that they could, by the exercise of ordinary care and diligence,
have known the true condition of said bank at the time of said
several statements so made to the secretary of State as afore-
said, or could, with the means of knowledge at their command,
have known that said bank was insolvent at the dates of said
several statements so signed by them as aforesaid, by examina-
tion. That the books of said bank, which were accessible to
said defendants, and could have been examined by them if
desired, showed that one Mead Mercantile Company was con-
stantly indebted from December 30, 1887, to the date of said
assignment to said bank, in divers large sums of money, evi-
denced by notes and overdrafts ranging from about $4,500,
November 7, 1887, up to $77,000, December 15, 1894, with
an overdraft of $7,825.97 at last-named date. That said in-
debtedness, December, 1888, amounted to over $60,000; June,
1889, to about $44,000; December, 1890, $45,000; De-
cember, 1891, to over $74,000; June, 1892, over $75,000;
December, 1892, $73,000, with overdraft for $10,787.42
in addition; June, 1893, over $73,000; December, 1893,
$73,000, with overdraft for $12,474.49; June, 1894,
$64,500 in notes with overdraft of $14,483.29; December
15, 1894, note for $77,000, with overdraft for $7,825.97.
That one firm, composed of W. B. Storts and J. D. Eubank,
styled 'Storts & Eubank,' were constantly indebted to said
bank in notes and large overdrafts from December 30, 1887,

to February 13, 1892, in amounts ranging from $52,000 at the former date in notes (and overdrafts for $1,895.11) to $117,294 at the latter date. That between said dates the amount of indebtedness gradually increased, until June, 1891, it amounted in notes to $146,691, and overdraft for $10,778.32. That their overdraft alone amounted, June, 30, 1888, to $16,401.19, with notes at over $52,000. That their indebtedness in June, 1889, was over $90,000; June, 1890, over $122,000; December, 1890, over $136,000. That said firm continued indebted to said bank, according to the books at the time of the assignment of the bank, for $117,294. That said book showed an individual indebtedness of said W. B. Storts of over $8,000 in June, 1891; over $19,000, December, 1891; nearly $25,000, June, 1892; over $30,000, December, 1892; over $35,000, June, 1893, over $38,000, December, 1893; over $54,000, June, 1894; and over $57,000, at the closing of said bank. That part of said indebtedness consisted in overdrafts at those dates. That the books of said bank showed on their face a constant indebtedness on the part of said cashier between December 30, 1887 (when he owed the bank $7,000 in notes and overdrafts), and over $19,000 at the close of the bank, on December 15, 1894. That the account of said cashier showed almost a constant overdraft and frequently for large amounts. For instance, in December, 1890, his account showed notes due from him $6,000, and overdrafts $13,529.46; June, 1892, $11,340 in notes and over $2,600 in overdrafts; in December, 1892, the same amount of notes, and $9,341.84 overdrafts; June, 1893, notes due by him $11,912, and overdraft $11,939.83; December, 1893, over $14,000 in notes and overdrafts; in June, 1894, $12,100 in notes, and $8,164.96 in overdrafts. That one firm, of B. P. Storts & Co. (said Joseph Field being a member of said firm), as shown by said books, was indebted to said bank in notes and overdrafts, in December, 1891, for over $6,000; in June, 1892, nearly $17,000; in December,

1892, over $15,000; in June, 1893, nearly $17,000; in December, 1893, nearly $22,000 (the overdrafts being over $7,000); in June, 1894, over $32,000; on December 15, 1894, $42,300 in notes, and $4,179.70 overdrafts. That one Josiah Baker, Jr., was between December 30, 1887, and December 15, 1894, constantly indebted, as shown by the books of said bank, for large amounts of notes and overdrafts—that is to say, over $17,000 at the former date, and at the latter date, $77,500 in notes and $9,790.59 in overdrafts. That said accounts showed that in June, 1889, he owed the bank over $86,000; June, 1890, about $50,000; June, 1891, over $76,-000; June, 1892, $83,000 in notes, and $13,094.39 in overdrafts; June, 1892, over $71,000; in December, 1893, over $56,000; in June, 1894, over $68,000. I find that said debtors were insolvent. I further find from the evidence that defendants all had knowledge that said debtors aforesaid were indebted to said bank at various times while they were acting as directors, but the evidence does not disclose that defendants had knowledge of the full extent of the indebtedness of said defendants; that said defendants had knowledge that said Joseph Field was a member of the firm of B. P. Storts & Co.; that defendants had full knowledge that all said debtors aforesaid were using a good deal of money out of said bank, and that said Field, as cashier, was cautioned by them not to let any one man or party have too much money. I further find from the evidence that said directors while acting as directors, committed to said cashier almost exclusively, if not entirely so, the matter of loaning money, and gave little or no personal attention on their part to the same; that, while they thus commited the management of loans and the taking of security to said cashier almost exclusively, they were about the bank frequently, making inquiry about the bank and its condition, and accepted assurances from said cashier that the same was always prospering; that, by a by-law adopted by the stockholders of said bank in 1882, it was provided that the cashier 'shall have

full power and authority to create indebtedness against the bank, to sign all issues of indebtedness and make indorsements for the bank, and receive and receipt for any pay out money for the bank;' that defendants Garnett, Storts and Hill were present at the adoption of said by-laws; that defendants knew during the time they were acting as directors that said bank was from time to time borrowing money from other banks but it does not appear from the evidence that they had actual knowledge of the extent of the indebtedness of said Citizens' Stock Bank to other banks while acting as directors. I further find from the evidence that said cashier, Joseph Field, was a brother of defendant, J. W. Field, and that Wm. Storts and B. P. Storts, debtors of said bank aforesaid, were and are the sons of defendant Storts; that Jerome D. Eubank, a member of said firm of Storts & Eubank, was and is a son of defendant R. B. Eubank. I furthermore find from the evidence that defendants at no time while acting as directors, counted the cash or examined the securities and footed the same up, so as to know the amount of assets or examined the securities given, if any, to secure money loaned, and that they did not require such securities to be exhibited to them for their sanction, nor did they give special directions to said cashier not to loan to the various debtors aforesaid shown to be so largely indebted to said bank. I further find from the facts and circumstances in evidence that defendants had their suspicions aroused by the character and kind of business of some of said debtors of said bank to such an extent that they were thereby put upon inquiry, and had they performed their duty, and examined properly into the facts, they could have discovered, by reason of such examination, the insolvency of said bank. I further find that said official statements, signed and attested by defendants, made to the Secretary of State as aforesaid, were materially different from the general balance book kept by the cashier of said bank while defend-

ants were directors; that, by comparison of said official statements with said balance book, it will be seen that the assets and resources are often greatly inflated, often to the extent of many thousand dollars, while the liabilities often appear diminished by many thousands of dollars in the published statements as compared with the amounts shown by the books. Particularly is this shown to be true with reference to the items of 'Loans and Discounts, Undoubtedly Good, on Personal and Real Estate Security,' 'Due from Other Banks, Good on Sight Draft,' 'Cash and National Bank Notes,' 'Surplus Funds on Hand,' 'Deposits subject to Draft at Sight by Banks,' 'Deposits Subject to Draft at Sight by Individuals,' 'Deposits Subject to Draft at Given Dates.' These discrepancies occur all along from 1887 until the close of the bank, and range in amounts from $25,000 to $50,000, and often more. Said published statements were materially false, and did not state or show the true condition of the bank at the dates mentioned therein, and particularly were false as to the items of the amount of loans and discounts, and undoubtedly good, on personal or collateral security, and loans secured on real estate security. I find further, that, if defendants did in fact examine the balance books kept by the bank, and compare the same with the statements in evidence signed and attested to be correct, they must necessarily have known such statements were false, but I conclude they did not make such comparisons or examinations. I furthermore find that had said directors at any of the dates when they made their said statements to the Secretary of State and for publication, examined the books kept by said bank, they could have ascertained the indebtedness in favor of the bank, and the character of the notes, and insufficiency of the securities therefor, to such an extent that they would thereby have discovered the insolvency of said bank. I think, as a matter of law, that when said defendants signed said statements to the Secretary of State they should be held to have meant to do so of their own personal knowl-

edge; that the public had a right to rely on the correctness of such statements so published; that plaintiff and the public had a right to rely on the published statements as being true, and that on the faith of such statements plaintiff did rely and deposit his money as stated in petition; that it was the duty of defendants, as managing officers of said bank, to know its condition, to acquaint themselves with the assets, cash and notes, and the nature of the security therefor; that they had no right to abdicate their function, and rely entirely upon the cashier employed by them, however good his reputation, to do their work, that if they could thus shield themselves from their duty of examining the books, and acquainting themselves with the loans made from time to time, and the securities taken therefor, there would be no necessity for the appointment of directors, under our statutes; that the law requiring three directors to attest as correct the sworn statements of the cashier and president contemplates that said directors should not be mere figureheads, but that they should sign such statements with personal knowledge of what they were doing, otherwise the publication of such statement at the place where the bank is kept would be without significance; that these statements must have been intended to advise the public with reference to the financial condition of the bank, so the public could act advisedly as to making deposits; that defendants, as directors, having special means of knowledge, would be presumed by the public, from the nature of their positions, having access to the books, notes, securities and cash of the bank (while the public has not) to have correct knowledge, and to make no statements that would be false or misleading; that having assumed to know, as of their own personal knowledge, the actual financial condition of the bank, and signed statements purporting to show a healthy, sound condition of the same, they must be held to have intended their statements to be believed, and, if in fact materially false, they will be bound for such false statements, and can not

shield themselves under the plea that they were ignorant of the true condition of the bank when they signed such statement; that, in order to hold the defendants liable, it is not necessary that they corruptly or intentionally signed statements knowing at the time they were false, and with the intention and purpose of deceiving the public thereby. In this case I do not find from the evidence that defendants continued on the business of the bank for the purpose of enabling them to reimburse themselves on account of having signed and indorsed obligations of said bank which did not appear in said statements and representations so made as charged in petition, nor that said business was continued for the purpose of enabling defendants to prefer themselves on account of deposits made in said bank by them as charged in said petition; that otherwise the facts so charged in the first and second counts of the petition, as hereinbefore modified, are found for plaintiff. The third count in said petition was dismissed by plaintiff. As a result of my conclusion as to the facts, and the law applicable thereto, I find that the defendants are indebted to plaintiff in the sum of $7,760, being amount deposited by plaintiff, less a credit of three per cent paid by assignee of said Citizens' Stock Bank; that said amount so found shall bear interest from the filing of this suit, January 25, 1895, at six per cent."

And the referee also filed with his report all of the evidence taken on the hearing of said cause.

In due time the defendants filed exceptions (32 in number) to the report. The court sustained the 1st, 3d, 4th, 15th, 17th, 18th, 19th, 20th, 21st, 22d, 25th and 26th, and overruled the others.

Those sustained are as follows:

"We except to the report of the referee:

"(1) Because said referee predicates his findings on the ground that the defendants had, in the management of the affairs of the Citizens' Stock Bank, as directors of said bank,

been guilty of negligence which was not an issue in this case, and had been settled by a judgment of this court in another case.

"(3) Because the conclusion of law of said referee, as stated in his report, that the plaintiff is entitled to recover upon the first count of the petition, is not supported by the findings of fact made by said referee in said report, in this: that said referee does not find as a matter of fact that the defendants, or either of them, did receive or assent to the reception by the Citizens' Stock Bank of Slater of the deposits by plaintiff, or did create or assent to the creation of the debt due by such bank to the plaintiff after they, or either of them, had knowledge of the fact that said bank was insolvent or in failing circumstances, but, upon the contrary thereof, found, as a matter of fact, that said directors did not have such knowledge, but simply were put upon inquiry, or, by the exercise of reasonable diligence, might have obtained knowledge of the insolvency of the bank, before plaintiff's deposits were made in said bank, or the indebtedness to him was created; and, as a matter of law upon this finding of fact, the plaintiff is not entitled to recover upon the first count of the petition, as the referee erroneously reports.

"(4) Because the referee erroneously finds as a matter of fact that the defendants were guilty of negligence in the discharge of their duties as directors of said bank, and concludes as a matter of law that by reason of such negligence the plaintiff is entitled to recover upon the first count of the petition upon the statutory cause given by section 2760 of the Revised Statutes of this State, and also is entitled to recover upon the second count for fraudulent representations, whereas as a matter of law, such negligence is not sufficient to authorize a recovery upon either count of the petition herein.

"(15) Because the referee finds that the defendants, as directors of the Citizens' Stock Bank, had their suspicions aroused by the character and kinds of business of some of the

debtors of said bank to such an extent that they were put upon inquiry, and by properly discharging their duties could have discovered the insolvency of the bank, which finding is against the evidence and against the weight of evidence.

"(17)  Because the referee failed to find specifically each fact made an issue by the pleadings, and did not find whether or not the defendants, or either of them, received or assented to the reception of a deposit or deposits in the Citizens' Stock Bank by the plaintiff, or created or assented to the creation of a debt by the Citizens' Stock Bank to the plaintiff, when they knew the bank to be insolvent.

"(18)  Because the referee finds that the statements furnished by the Citizens' Stock Bank to the Secretary of State were intended by the defendants to induce the plaintiff to deposit his money in said bank or permit said bank to become indebted to him, which finding is against the evidence and against the weight of evidence.

"(19)  Because the referee finds that the defendants were guilty of negligence in the performance of their duties as directors of the Citizens' Stock Bank, and bases his conclusions of law that the plaintiff is entitled to recover upon such findings, when in truth no such issue is raised by the petition in this cause, nor were any such issues referred to said referee, and the finding upon that point is not within the issues made by the pleadings in this cause.

"(20) Because the referee erroneously reports as a matter of law that defendants must be held to have intended the statements filed with the Secretary of State by the Citizens' Stock Bank, and thereafter published in the local papers at Slater, attested by them as directors of said bank, to have been made as of their own personal knowledge, whereas, as a matter of law, the plaintiff had no right to rely upon said statements as having been made by defendants as of their own personal knowledge, or as their personal statements and representations.

"(21)   Because said referee erroneously reports and finds as a conclusion of law that the reports of the financial condition of said bank made to the Secretary of State, and published in the papers at Slater, were intended by defendants to induce the plaintiff and the public to give credit to said bank, and that said statements were the individual statements of the directors, and not the statements of the corporation, and therein said referee erred as a matter of law.

"(22)   Because the uncontradicted facts introduced before the referee, and included in the testimony returned by him with his report, showed that the defendants, in assigning and attesting the statements of the financial condition of said bank to be filed with the Secretary of State, in good faith, wholly believing said statements to be true, and believing that they had sufficient knowledge of the affairs of said bank for the said statements, and yet said referee wholly fails to find and report distinctly and in express terms his conclusion of fact that said defendants did believe said statements to be true, and did make the same in good faith, only relying upon the reports made to them by the officers in charge of the books of said bank, when the evidence before said referee fully established said fact, and the same should have been found as a matter of fact by said referee, and not stated in his report inferentially, as said referee does state the same.

"(25)   Because the referee erroneously reports and holds as a matter of law that when the defendants, as directors of the Citizens' Stock Bank, signed and attested reports of its financial condition, that it was their duty to know the condition of the bank, and that they had no right to rely upon the statements of the cashier and officers in charge of the books as to their contents, but were themselves bound to know what said books contained, and that they must have had personal knowledge of the exact financial condition of the bank, and, in effect, that they were warrantors of the truthfulness of the statements aforesaid, and are liable for fraudulent misrepre-

sentations if said statements were not absolutely correct, although believed by them to be true, and signed in reliance upon statements furnished by officers in charge of the bank of good repute, and without any facts known to defendants to excite their suspicions that such representations were false, whereas the defendants could not be held liable in an action of deceit upon any such finding of facts, and the referee erroneously reports to the contrary.

"(26)   Because the referee's conclusions of law as to the second count of the petition are not supported by his findings of facts applicable to said count, in this: that the facts found by said referee as to the statements of the financial condition of said bank showed that said statements were attested by defendants and signed by them as directors of said bank, and that said statements appear to be the actual statements of the corporation, and were attested by defendants under the honest belief that they were true, and in reliance upon statements made to them by officers in charge of the books of the bank, and that the defendants could not be held to have made said statements falsely and fraudulently, upon the facts found by said referee, nor can they be held liable upon such facts in an action of deceit for the statements therein referred to."

These exceptions were afterwards taken up by the court for hearing, to wit, on the ———— day of August, 1897, at the said June term of the said circuit court, and, after hearing the argument of counsel, the said exceptions were taken under advisement by the court until the October term, 1897, of said Saline County Circuit Court.

Afterwards, on the first day of the said October term, 1897, to-wit, on the 4th day of October, 1897, the plaintiff asked the court to give the following declarations of law:

"The court declares the law as follows:

"1.   That if the evidence shows that the defendants were directors of the Citizens' Stock Bank, and that the same was a banking institution, organized and doing business under the

provisions of chapter 42, art. 7, Revised Statutes 1889, at the time stated in the plaintiff's petition, and that the said defendants, as such directors, kept said bank open for the reception of deposits therein, and while so keeping said bank open for that purpose the plaintiff deposited therein the sum of money alleged in the petition, and that the said defendants assented to the reception of said deposit after they had knowledge of the fact that the said bank was in an insolvent condition or in failing circumstances, then the finding must be for the plaintiff, and his damages assessed at such sum as the evidence may show was so deposited by him in said banking institution and remains unpaid.

"2.    The court further declares the law to be that if the defendant directors knew that the Citizen's Stock Bank was open for the transaction of business and the reception of deposits at the time that the plaintiff deposited his money in said bank, as stated in the petition, then the said defendants must be found as assenting to the reception of said deposits by said bank, unless the defendant directors objected thereto.

"3.    The court further declares the law to be that it was the duty of the defendant directors, under their office, to manage and control the affairs of the Citizens' Stock Bank, and it was their duty to know the condition of said bank, and, if the evidence shows that the plaintiff deposited his money in said bank while the same was in an insolvent condition or in failing circumstances, the law presumes that the said deposit was made with the assent of the defendants as directors, and that they had knowledge of such insolvency at the time; and, unless the defendants rebut said presumption by evidence, such presumption becomes conclusive, and the burden of proof is placed upon the defendants to show want of such knowledge or assent; and where such legal presumption is sought to be overcome by evidence, as in this case, the presumption of knowledge of said bank's insolvency is sought to be denied by the testimony of the defendants, the said knowledge must be

found as a fact; but such knowledge need not be proven by direct evidence, but may be proven by facts and circumstances. And if the evidence shows that the defendants had opportuni-ties for knowing the true condition of said bank, and were fre-quently at its banking house, and made inquiries of its officers as to its condition, and examined its assets and books, and had knowledge of such facts and circumstances which, if followed up by a reasonably prudent person, would have disclosed the true condition of said bank, then such knowledge may be in-ferred from such facts and circumstances and such opportuni-ties for knowing the condition of said bank.

"4. The court further declares the law to be that if the evidence shows that the plaintiff, at the time stated in the second count of the petition, deposited any sum of money in the Citizens' Stock Bank, and prior to making said deposit the defendants represented the said bank to be in a solvent condi-tion, by making and publishing written statements showing said bank to be in a solvent condition, which said statements were seen and relied upon by the plaintiff before making said deposits, and that at the time said statements were so made and published by the defendants, the said bank was in an insolvent condition, and that said statements were false, and that the defendants knew at the time that said statements were false, or that the defendants were conscious of the fact that they did not know whether the said statements were true or false, and published the same knowing that they had no knowl-edge as to whether said statements were true or false, and such statements were made for the purpose of inducing the plaintiff or other persons who might see them to believe that said bank was in a solvent conditon, then the finding must be for the plaintiff, and his damages assessed at such sum as the evidence may show was so deposited by him in said bank and such sum as may remain unpaid.

"5. The court further declares the law to be that the statements required by law to be made to the Secretary of

State by the defendant directors should be a true statement of the condition of the Citizens' Stock Bank, of which they were directors, at the time stated in said statements so made and signed by them, and that the said statements are for the information of the public when the same are published as required by law, and that the plaintiff and the public had a right to rely upon such published statements as being true, and that said statements read in evidence purported to be the corporate act of the board of directors of the Citizens' Stock Bank, and purported to be within the personal knowledge of such of the defendants as signed the same; and if the evidence shows that the said statements were false and did not contain a true statement as to the condition of said bank, and the defendant directors knew at the time said statements were published that the same had not been authorized by the board of directors of said bank, and knew that the same was the individual act of said directors so signing and publishing said statements, and they knew that said statements were designed for publication, and were intended for the public, and that said statements were seen and relied upon by the plaintiff before making his said deposit, and that the defendants knew that they had no personal knowledge as to whether said statements were true or false, and that said statements were materially false, and that said bank was then in an insolvent condition instead of a sound condition, then said statements were made and published *scienter*, and the plaintiff is entitled to recover such damages as the evidence may show that he has sustained in consequence thereof."

These declarations of law the court refused to give, to which action of the court in refusing to give each of said declarations of law the plaintiff then and there excepted.

The court thereupon rendered a judgment upon the referee's report for the defendants, in words and figures as follows: "Now, at this day come again the parties, by their respective attorneys, and the exceptions heretofore filed by

defendants to the report of Hon. Charles W. Sloan, referee, and this cause having been argued and submitted at the last term, and taken under advisement, and the court, being now fully advised of and concerning the premises, doth find from the report that the referee did determine as a fact and report that defendants did not have knowledge of the insolvency of the Citizens' Stock Bank, or of its failing condition or circumstances, at the times of the making of the deposit and the creation of the debts sued for in plaintiff's petition; and the court doth further find from said report that the referee determined and reported as a fact the various statements of the condition of the said Citizens' Stock Bank, signed by the defendants, were made by them without any knowledge or information that the same were untrue, but were made in the honest belief that said statements and representations of the condition of said bank set out and referred to in the petition were true, and that said statements and representations were made by defendants in good faith, and in reliance upon the assurances of the cashier of said bank that it was always prospering, and in reliance upon the facts furnished to them as to the financial condition of the said bank by the cashier in charge of its books; and the court, being satisfied that said finding of fact, as above set out, was proper and correct, upon the evidence reported by the referee, doth now sustain exceptions numbered 1, 3, 4, 15, 17, 18, 19, 20, 21, 22, 25 and 26 filed by the defendants to the report of the referee, and doth now overrule all other exceptions filed by defendants to said report; and the court doth hold and determine as a matter of law, upon the facts reported by said referee, that the plaintiff is not entitled to recover upon either count of the petition, and doth therefore find the issues for the defendants upon all the counts of the petition. Wherefore it is considered by the court that the plaintiff take nothing by his said writ, and that defendants go hence without day, and that they have and recover of plain-

tiff their costs and charges in this behalf laid out and expended, and that execution issue therefor."

In proper time the plaintiff filed a motion for a new trial, which being overruled, he filed a bill of exceptions. In the abstract of the record it is stated that the evidence taken before the referee tended to support his findings of fact. The bill of exceptions did not preserve any of the evidence in the case, notwithstanding the defendants insisted upon it being embodied in full therein. So that this case is now before this court on the pleadings, the report of the referee, the exceptions thereto, the instructions asked by the plaintiff, and the judgment of the court on the referee's report.

Of the exceptions sustained, the fifteenth and eighteenth are based upon the weight of the evidence, and the ruling of the trial court as to them will not be reviewed in this court: First, because it is the settled practice of this court not to review conflicting evidence, nor to review the rulings or findings of the trial court on such evidence; and, second, because, even if this were not so, there is no evidence before us in this case. The ruling of the trial court must therefore be taken to hold, in this regard, that the suspicions of the defendants were not aroused by the character and kinds of the business of some of the debtors of the bank to such an extent that they were put upon inquiry, and by the proper discharge of their duties they could have discovered the insolvency of the bank, and that the statements made by the defendants to the Secretary of State were not intended to induce the plaintiff to deposit his money in the bank.

This leaves two questions of law in this case, to-wit: First, in an action under section 2760, Revised Statutes 1889, by a depositor against the directors of a bank, who assent to the reception of deposits after they have knowledge that the bank is insolvent or in failing circumstances, are such directors individually responsible for such deposits, unless it appears, from the whole case, that they had actual knowledge, or are

they liable if it appears that they were *negligently ignorant* of the condition of the bank, in that they could have ascertained its condition if they had not neglected to investigate or keep posted as to the affairs of the bank, and are they so charged by law with the duty of managing the business of the bank that they are charged with knowledge, and are estopped to plead ignorance of its condition? And, second, are directors of a bank liable to depositors, in a common law action for deceit, for statements made to the Secretary of State, required by section 2752, Revised Statutes 1889, which were not true, but which they honestly believed were true, and which were in good faith based upon details furnished to them by the cashier of the bank, whose reputation was good? These questions will be treated in their order.

I. The first proposition necessitates a short retrospect of the law. The relation of a depositor to a bank is that of ordinary debtor and creditor. "The relation between the creditors and the corporation is that of contract, and not of trust." [Briggs v. Spaulding, 141 U. S. 132, followed in Bank v. Hill, 148 Mo. loc. cit. 396.] "But there is nothing, of either contract or trust, in all ordinary cases, to create any relation between the creditor and the directors." [Id.] Accordingly, it was held in Bank v. Hill, *supra* (which was a suit by the creditors of the same bank against these same defendants to recover the deposits lost by the creditors by reason of the negligence of the defendants in managing the affairs of the bank), that there could be no recovery by depositors against directors of a bank because of the negligence of the directors in managing the affairs of the bank; that the directors are liable for negligent performance of duty to the bank, or to its assignee, or to a receiver thereof, but not to the creditors, because of want of privity of contract or duty between them. So, also, in Fusz v. Spaunhorst, 67 Mo. loc. cit. 264, 265, the same doctrine was announced by this court, speaking through SHERWOOD, J., and it was further

Utley v. Hill.

pointed out that, aside from the statutory liability, directors were not liable individually to depositors for mere nonfeasance; that "nothing short of active participancy in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the party complaining, will give origin to individual liability;" that the injury must be "occasioned by the malicious or fraudulent act of the party complained of."

The case last referred to was an action by depositors against directors of a bank, and was based upon section 27, article 12, Constitution of Missouri, which is as follows: "Sec. 27. It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier, or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, *after he shall have had knowledge of the fact that it is insolvent or in failing circumstances*; and any such officer, agent or manager, shall be individually responsible for such deposits so received, and all such debts so created with his assent." It was held that this section of the Constitution was not self-enforcing, and that, as no statute had been passed carrying it into effect, there was no statutory liability of directors of a bank to its depositors, and as there was no such liability, except upon the grounds pointed out, at common law the defendants were not liable at all.

By the act of May 15, 1877, the General Assembly amended the law as to banks. [Laws 1877, p. 28.] Section 21 of that act was as follows: "No president, director, manager, cashier or other officer or agent of any bank organized and doing business under the provisions of this act, or any law of this State, shall receive or consent to the reception of deposits or create or consent to the creation of any indebtedness *after becoming aware that such association is insolvent or in failing circumstances.* Every person violating the provisions of this section shall be individually responsible for such deposits so received and all such debts so contracted," etc. Then

follow provisions allowing contribution to be recovered by one director from another, which are omitted, because not material here.

At the same session the General Assembly, by an act approved April 18, 1877 (Acts 1877, p. 239), amended chapter 201, relating to crimes, by adding a new section thereto, as follows: "If any president, director, manager, cashier, or other officer of any banking institution, doing business in this State, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution, or if any such officer or agent shall create or assent to the creation of any debts or indebtedness by such bank or banking institution, in consideration, or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution *after he shall have had knowledge of the fact that it is insolvent or in failing circumstancs,* he shall be deemed guilty of larceny, and upon conviction thereof, shall be punished in the manner and to the same extent as is provided by law for stealing the same amount of money deposited, or valuable thing, if loss occur by reason of such deposit."

The act of May 15, 1877, relating to civil liability, was amended by changing the words, "after becoming aware," to the words, "after he shall have had knowledge of the fact," and was carried into the revision of 1879, with an amendment as to contributions not material here, and became section 918, article 7, chapter 21. The act of April 23, 1877 (Laws 1877, pp. 35, 36), now section 2761, Revised Statutes 1889, makes the insolvency or failing circumstances of the bank *prima facie* evidence of the knowledge and assent of the directors.

The act of April 18, 1877, relating to criminal liability, was carried into the revision of 1879, and became section 1350, article 3, chapter 24, but it was amended by that revision by adding thereto the following proviso: "Provided, that the failure of any such bank or banking institution shall

be *prima facie* evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit."

The act of 1887 (Laws 1887, p. 162), extended the criminal law so as to apply to private banks. The provision as to civil liability was carried into the Revised Statutes of 1889 without any change whatever. The provision as to criminal liability (being section 1350, Revised Statutes 1879, as amended by the act of 1887), was carried into the revision of 1889 without change, and appears as section 3581 thereof.

Thus we see that, so far as civil liability is concerned, the only change material to this inquiry that has been made in the law since the two acts of 1877 were passed was to strike out the words, "after becoming aware," and to substitute the words, "after he shall have had knowledge of the fact" that the bank is insolvent or in failing circumstances; thereby using the same words that are employed in the Constitution and in the criminal statute, and that the criminal statute makes the failure of the bank *prima facie* evidence of knowledge on the part of any officer that the bank was insolvent or in failing circumstances when the deposit was received, while the civil statute makes the insolvency or failing circumstances of the bank *prima facie* evidence of the knowledge and assent of the directors.

State v. Darrah, 152 Mo. 522, was a criminal prosecution, under section 3581, against the president of a bank for receiving deposits after he had knowledge that the bank was insolvent or in failing circumstances, and it was held error to refuse an instruction which declared the law to be that, notwithstanding the failure of the bank was *prima facie* evidence of such knowledge, still the burden of proof was not changed by the statute, but that the defendant could show the condition of the bank and circumstances tending to exonerate him from criminal liability, and then, on the whole case, the burden of proof would still rest on the State; and the same is true

as to proceedings under the civil statute. This decision disposes of the plaintiff's claim that the defendants are estopped from showing want of knowledge because it is their duty under the law to know.

If anything further were needed to be said as to this contention, it would be sufficient to add that the statute only makes the failure of the bank *prima facie* knowledge of insolvency, whereas, if the defendants are estopped to deny knowledge because it was their duty to know, or because if they had not been negligent they would not have been ignorant, then the failure of the bank would necessarily be *conclusive* knowledge of insolvency, and if this were true, there would be no defense to a suit of this character or to a criminal prosecution. It would be enough to prove the deposit and the failure of the bank, and the court would have to instruct the jury to return a verdict for the plaintiff. This would make directors and officers of a bank guarantors to the depositors of all money deposited in the bank. The history of the law, its language, and the prior decisions of this court demonstrate that neither the framers of the Constitution nor the lawmakers ever intended to provide for any such revolution in the liability of directors of a bank. The law is drastic and penal, but it does not cut off all defense. It was intended to reach and punish the guilty not to ruin and disgrace the honest directors, who acted in perfect good faith and without guilty knowledge. Such a construction as is here contended for would shut the doors of every bank in the State, because honest and responsible directors would not serve as such officers, and thereby incur liabilities and penalties far beyond what the law imposes on them in similar relations to all other corporations, or else a far worse condition than closing the banks would be brought about, for irresponsible and conscienceless persons could alone be induced to accept directorships or offices in banks, intending to "make hay while the sun shone," and when the crash came take a change of venue

to some other jurisdiction, where the extradition laws do not apply.

The liability of directors under the criminal law must be regarded as settled by the Darrah case. The civil and criminal statutes, though passed as separate acts, were passed at the same session of the General Assembly, and were both enacted to carry into effect the provisions of section 27, article 12, of the Constitution, which provides for a criminal and civil liability both, and therefore these acts may be and should be read together, and a judicial construction of one applies with equal force to similar provisions of the other. The Constitution and the acts require that, to subject a director or officer to the pain and penalties denounced, *"he shall have had knowledge of the fact that it is insolvent or in failing circumstances,"* when he assented to the receipt of the deposit. The word "knowledge" here employed must be taken in its common acceptation; that is, in the plain or ordinary meaning and usual sense of the word. [State v. Jones, 102 Mo. 305; Warren v. Paving Co., 115 Mo. 572; State v. Marion Co. Ct., 128 Mo. 427.] It ought to be so construed that no man who is innocent can be punishd or endangered. [State v. McLain, 49 Mo. App. 398; 9 Bac. Abr., p. 255.] So treated, we may properly look to the source to which men generally apply for the meaning of the word "knowledge." Webster's Dictionary defines "knowledge:" "1. The certain perception of truth; belief which amounts to, or results in, moral certainty; indubitable apprehension. 5. Information; intelligence; as, 'to have knowledge of a fact.'" The knowledge which the law requires that a director shall have had means a guilty knowledge, not an innocent, *bona fide,* ignorance arising from neglect to keep posted or to inquire. It must be construed to have been intended as a sword with which to punish the guilty, and a shield to protect the innocent. If this had not been the intention, the liability would have been made absolute and unqualified, instead of dependent upon knowledge. The framers

of the organic and of the statute law must be held to have understood how the business of a bank is conducted.   They must have known that the directors are drawn from the busiest men in the community; men who have carved success out of chaos, who have succeeded where the great multitude has failed; men who are not expected, and could not afford, to give their whole time to the business of the bank.   The lawmakers knew that the active management of a bank usually devolves upon the president and cashier, and that to the latter is usually intrusted the management of the details.   They knew that few directors had the time, and fewer still the capacity, to examine the books of a bank  and ascertain its solvency; that even in their own business they could not take off a trial balance from the books they employed experts to keep for them, either because they had not the time to do so for themselves, or because they did not have the capacity to do so.   The law imposes a liability on directors of a bank which directors of no other corporation are subject to.   It is a liability which is not limited to any specific amount; it is as broad as the wrong-doing—the fraud—of the director.   It is a personal liability for every cent a depositor lost which a director consented to have deposited in the bank after the director shall have had knowledge of the insolvency of the bank or that it was in failing circumstances. It is an unlimited liability, but it is not an absolute one.   It is qualified by a condition, the existence or non-existence of which may make the director liable for the total amount lost by the depositor or may not make him liable for a cent thereof. The liability is measured by the knowledge.   As was said in Fusz v. Spaunhorst, *supra*, the directors are not liable to the depositors, "unless the injury were occasioned by the malicious or fraudulent act of the party complained of; mere nonfeasance will not answer."   So it is that the plaintiff in a suit of this character must allege a fraud committed by the defendant—a willful act done—in order to hold the defendant liable, and, having alleged a fraud, the burden rests on the

plaintiff to prove it. And as was aptly stated by BLACK, J., in Van Raalte v. Harrington, 101 Mo. loc. cit. 610: "It is one thing to say knowledge may be inferred from facts and circumstances sufficient to put a person upon inquiry. . . . but it is a different thing to say such circumstances are, as a matter of law, knowledge." In this case there is no pretense that the defendants had actual knowledge, and the judgment of the trial court finds the fact to be, not only that they had no knowledge, but also that their suspicions were not even aroused to such an extent as would have put a prudent man on inquiry. The judgment of the circuit court in this regard is this: "And the court doth further find from said report that the referee determined and reported as a fact the various statements of the condition of the said Citizens' Stock Bank, signed by the defendants, were made by them without any knowledge or information that the same were untrue, but were made in the honest belief that said statements and representations of the condition of said bank, set out and referred to in the petition, were true, and that said statements and representations were made by defendants in good faith, and in reliance upon the assurances of the cashier of said bank that it was always prospering, and in reliance upon the facts furnished to them as to the financial condition of the said bank by the cashier in charge of its books, and the court being satisfied that said findings of fact, as above set out, was proper and correct upon the evidence reported by the referee," etc. In the case of Bank v. Hill, *supra*, this court held that they were not liable in a suit by creditors for negligence in the management of the affairs of the bank. But one conclusion can be drawn from these conditions, and that is that the judgment of the circuit court on the first count of the petition is right.

This conclusion is in harmony with adjudications upon analagous statutes in other jurisdictions. State v. Tomblin, 48 Pac. Rep. 144, was a criminal prosecution, under the statute of Kansas, against the defendant, charging that as presi-

dent, director, and managing officer of a bank he "received deposits of money when the bank was insolvent, knowing that it was in that condition." The Supreme Court of Kansas said: "While the instructions fairly state the law in the main, the concluding paragraph of the fourteenth instruction given seems to imply that the defendant might be held guilty in a criminal prosecution if, through his negligence, he did not know the actual condition of the bank when it was in fact insolvent. It was proper for the jury to take into consideration the defendant's relation to the bank as a managing officer, and the duties he owed to it, for the purpose of determining whether he actually knew its insolvent condition; but mere negligence would not render him guilty of a crime. It was incumbent upon the state to establish, not only the fact of insolvency, but the defendant's knowledge of it." Minton v. Stahlman (Tenn.) 34 S. W. Rep. 222, was an action by a depositor against the officers and directors of a bank to recover a deposit received when the bank was alleged to be insolvent, and lost by the subsequent failure of the bank. The declaration alleged that defendants were officers of the bank, "and having due notice and knowledge of such facts and circumstances as by ordinary diligence and business skill would have shown them its true financial condition, which was that of insolvency, and having reason and cause to know that any one depositing money and evidences of debt therein for collection was liable to lose the money so deposited or collected by reason of its insolvency......did continue to keep open and operate the same as a bank, and invite the custom and patronage of plaintiff and others, and that plaintiff being induced thereby, and deceived and misled by such wrongful act of defendants," deposited his money, and lost it. The defendants demurred to this charge, on the ground that "they are not liable, as directors of the Bank of Commerce, for receiving deposits when they merely had notice or knowledge of facts and circumstances which, by use of ordinary diligence and business

skill, would have shown the said Bank of Commerce to be insolvent. In order to be liable, it must appear that they knew the said bank to be insolvent and willfully and knowingly received the deposits." The statute of Tennessee provides: "And if any director or directors of any of the banks of this State shall be guilty of any fraud or willful mismanagement of the affairs of such bank by which any loss shall be occasioned to its creditors, such director or directors, upon legal ascertainment of the facts, shall be individually liable for such loss." The Supreme Court quoted and followed the decision of this court in Fusz v. Spaunhorst, *supra*, and said: "It was held by this court in Hume v. Bank, 9 Lea. 728, that 'this section provides for a case of intentional fraud and willful mismanagement.' It is not tantamount to a charge of intentional fraud or willful mismanagement to allege that 'having due notice and knowledge of such facts and circumstances as, by ordinary diligence and business skill, would have shown them its true financial condition, which was that of insolvency.' This, at most, is a charge of negligence and inattention; whereas, there is no liability to creditors or depositors, under this statute, without fraud or willful mismanagement."

Deadrick v. Bank (Tenn.), 45 S. W. Rep. 786, was a bill by depositors against directors of a bank for the loss of their deposits by the failure of the bank, which is alleged to have occurred by the fraud, gross neglect, and willful mismanagement of the directors "in permitting and sanctioning certain loans to insolvent parties, without proper security, whereby the bank was wrecked." The action was based on the statute of Tennessee, above set out. The facts in that case and in the case at bar bear so striking a similitude that it is worthy of more than a passing reference. There a son of one of the directors was the cashier. The case was referred to a referee, who reported in favor of the plaintiffs, and held the directors liable, and the chancellor entered a decree accordingly. The court of chancery appeals reversed that find-

ing, and discharged the defendants. The case was appealed to the Suprme Court, where, referring to the decision of the appellate court, it was said: "Continuing, that court says: 'It is manifest, from the evidence, that in the first year of this bank's existence its directory paid but little attention to its affairs. The Duncans seem to have dominated. W. M. Duncan was believed to be, and from the record was, then, a man of large means, and he was allowed free access in obtaining loans from the funds of the bank to carry on his speculations and enterprises. While this is true, it is equally true that the other directors in the bank believed with great confidence that he approached the condition financially of a semi-millionaire, and that he was good for all his engagements. It appears, however, that in the larger or higher banking circles of the city, in 1891, his credit began to wane, but with his own bank people it was unquestioned until several months of 1892 had passed.' Concluding on this point, the court of chancery appeals say: 'We find much evidence in the record that the loans specifically reported by the special commissioner, and made the basis of the chancellor's decree, were imprudent, and made without that care, caution, and prudence which is ordinarily supposed to govern the action of the prudent business man.' But, while this is so, they again say: 'We have been unable to discover any proof which, with its fair and legitimate inferences, leads to the belief that appellants are chargeable, as directors, with fraud, or any willful mismanagement of their directory trust, in connection with the renewal or continuance of the loans.' Upon this finding by the court of chancery appeals it is clear that, in so far as complainants rest their right to recover upon the statutory liability of these directors to them as creditors of this bank, their bill must fail."

Patterson v. Manufacturing Co. (Minn.), 4 L. R. A. 745, was a suit by a creditor against a director of a manufacturing company based upon a violation of the statute of Min-

nesota, which provided: "If any corporation organized and established under the authority of this act shall violate any of its provisions, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be jointly and severally liable in an action founded on this statute for all debts contracted after such violation as aforesaid." The officers, by authority of the directors, loaned its credit by making and indorsing accommodation paper, in consequence of which the company failed, and this was the violation of the statute upon which the plaintiff predicated a right to recover. The Supreme Court (1. c. 751) said: "Plaintiff's contention is that it is the duty of a director to know what is being done in corporate matters; that it is neglignce for him not to know; and therefore he is conclusively presumed to have known, and, not objecting, he must be deemed assenting. Such a construction would impose this severe statutory liability for at least every act of mere negligence for which he would be liable at common law; but, as the act is highly penal, we do not think it ought to receive so broad a construction. The language of the various sections all tends to indicate that the legislature intended that something more than mere negligence should be necessary to subject a person to those heavy penalties—something amounting to willful, or, at least, intentional, violation of legal duty, either ordering the act done, participating in doing it, or assenting to its being done with knowledge that it was being or about to be done."

Other cases might be added, but the principles would not be more clearly enunciated by a multiplication of precedents. Of course, it must not be understood that it is intended to be held that a director can shut his eyes to facts, circumstances. and conditions, and then say he did not know what he must have seen if he had used his senses; for such conduct would be fraudulent and willful disregard of duty. No such condition is presented by this record. The defendants were negligent, but they acted in good faith, were innocent of wrong-

doing, and hence are not to be charged as if they had acted with knowledge, and therefore were guilty of fraud. They were guilty of nonfeasance, but not of misfeasance; of negligent omission of duty, but not of fraudulent commission of wrong. It follows that the first proposition must be decided in favor of the defendants, and that the judgment of the circuit court that a case against them, under section 2760, Revised Statutes 1889, had not been made out by the proof, is right.

II. The second proposition is, are directors of a bank liable to depositors, in a common law action for deceit, for statements made to the Secretary of State, required by section 2752, Revised Statutes 1889, which were not true, but which they honestly believed were true, and which were, in good faith, based upon details furnished to them by the cashier of the bank whose reputation was good?

The decision of this court in Fusz v. Spaunhorst, 67 Mo. loc. cit. 264, that, "Aside from statutory provisions or one of similar nature in the organic law, the directors or officers of an incorporated bank would not be individually responsible, in an action at law, for injury resulting to a creditor or depositor, unless the injury were occasioned by the malicious or fraudulent act of the party complained of. Mere nonfeasance will not answer. Nothing short of active participancy in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the party complaining will give origin to individual liability as above indicated"—must be taken as the major premise of the syllogism by which this proposition is solvable. And the duty of directors of a bank, under the law, in making statements to the Secretary of State, is the minor premise. Section 10 of the act of 1877 (Laws 1877, p. 30, now section 2751, R. S. 1889) made it the duty of every banking corporation to furnish to the Secretary of State, when required by him, a statement verified by the president and cashier, and attested by three directors, "of the actual condition of such corporation at the close of business on

the day designated, and which day shall be prior to such call." Section 10 of the act (now section 2752) also prescribed the form of the statement. Section 11 of the act (now section 2753) required the statement to be published in one or more daily newspapers published in the city or county where the bank was located, or in such a weekly paper if there was no such daily, and a copy to be posted in the banking house accessible to all. Section 12 of the act (now section 2754) made it the duty of the Secretary of State to call for such a statement not less than twice each year, and provided that "the secretary shall give no notice to any person whomsoever of the day on which he will call for such statement." For a violation of his duty the Secretary of State was subject to removal from office and a fine of not less than $500. The act then provided: "And should any president or secretary of any such corporation, or any director thereof, refuse to make the statement so required of them, or shall willfully and corruptly make a false statement, they, and each of them, shall be deemed guilty of a misdemeanor, and upon conviction thereof, upon information or indictment, shall be punished by a fine for each offense, not exceeding five hundred and not less than one hundred dollars, or by imprisonment not less than one nor more than twelve months in the city or county jail, or by both such fine and imprisonment." The statute which created the duty of making these statements to the Secretary of State, therefore, denounced the penalty for refusing to perform the duty, and also prescribed the punishment, if the statement was willfully or corruptly false. Under this condition of the law, can it be said that any other liability or penalty can be applied than that the law itself imposes? Can it be that in this way the common-law action of deceit has been enlarged by statute? Or can it be maintained that this statute overcomes the nonliability declared in the case of Fusz v. Spaunhorst? The first canon of construction of a statute law is that "an affirmative enactment of a new rule implies a negative

of whatever is not included or is different, and, if by the language used a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise." [Ex parte Joffee, 46 Mo. App. 360; Suth. St. Const. sec. 140; Wells v. Supervisors, 102 U. S. 625.] Suth. St. Const. (section 208) lays down the rule: "When a law imposes a punishment which acts upon the offender alone, and not as a reparation to the party injured, and where it is entirely within the discretion of the lawgiver, it will not be presumed that he intended that it should extend further than is expressed; and humanity would require that it should be so limited in construction." Sedgwick's Statutory and Constitutional Law (2 Ed.), p. 341 et seq., points out that, "where a precise remedy for the violation of a right is provided by statute, it often becomes a matter of interest to know whether the statutory remedy is the only one that can be had, or whether it is to be regarded as merely cumulative, the party aggrieved having also a right to resort to his redress for the injury sustained, at common law, or independently of the statute. In regard to this we have already noticed the rule that where a statute does not vest a right in a person, but only prohibits the doing of some act under a penalty, in such a case the party violating the statute is liable to the penalty only; but, that where a right of property is vested by virtue of the statute, it may be vindicated by the common law, unless the statute confines the remedy to the penalty." And again, at page 343, the same author says: "But on the other hand, it is a rule of great importance, and frequently acted upon, that where by a statute a new right is given and a specific remedy provided, or a new power and also the means of executing it are provided by statute, the power can be executed and the right indicated in no other way than that prescribed by the statute." End. Interp. St., sec. 465, says: "If the statute which creates the obligation, whether public or private, provides in the same section or passage a specific

means or procedure for enforcing it, no other course than that thus provided for can be resorted to for that purpose." This has been the rule followed in Missouri ever since the case of Riddick v. Governor, 1 Mo. 147, where it was said: "It is an incontrovertible maxim of law, that a statute imposing a penalty for a new-created offense, or for a breach of duty, and defining the particular mode in which, and before what tribunal the penalty shall be recoverable, must be strictly pursued." And then, pointing out that the act under consideration imposed a new duty upon sheriffs and imposed a penalty for its violation, and prescribed the method of enforcement to be pursued and the tribunal to try the cause, the court said: "We are at once led to the conclusion that they [the lawmakers] intended to provide, specifically, an adequate remedy for the neglect of each particular duty thereby created, and a different construction would subject the sheriff to a liability which we can not reasonably suppose he ever intended to incur." This rule is recognized and approved in Ellis v. Whitlock, 10 Mo. 781; State v. Canton, 43 Mo. 51; Moore v. White, 45 Mo. 206. So, on the same principle, it was said by NORTON, J., in Parish v. Railroad, 63 Mo. loc. cit. 286: "So far as the law is to be regarded as punitive, it should be strictly construed, and so as not to enlarge the liability it imposes, nor allow a recovery unless the party seeking it brings his case strictly within the terms or conditions authorizing it. So far as it is to be considered as compensatory for an injury done, it is to be construed as any other statute." This question is set at rest, however, in People's R'y Co. v. Grand Ave. R'y Co., 149 Mo. loc. cit. 253.

Applying these rules to the case at bar, we have this result: Before the enactment of this statute there was no obligation on directors or officers of a bank to make any kind of a statement of the actual condition of the bank to the Secretary of State or to any one else, nor to publish any such statement in the newspapers. The obligation and duty so to

do was created by the statute. The same act which imposed the duty prescribed the penalty for its violation and the tribunal before which the penalty should be enforced; that is, made it a misdemeanor, punishable on information or indictment, by fine and imprisonment. The conclusion is inevitable and unavoidable that no other penalty can be exacted or enforced than that prescribed by the act. Nor can a false statement made by directors of a bank to the Secretary of State be made the basis of a common-law action for deceit. The reason is plain. The law exacts the statement; hence it is not voluntarily made. The statement is required to be made to the Secretary of State, so that he may take steps to close the bank if it is dangerous to the welfare of the people for it to continue business, but it is in no sense a statement made by the directors with intent to induce persons to deposit their money in the bank, and therefore a common law action of deceit can not be predicated upon it. But, above all, the law imposes the duty and prescribes the punishment for a violation thereof. The law vests no right of property or of action in any one which may be vindicated by the common law, and therefore the penalty imposed by the law is exclusive, and no other remedy is open to any one.

Proceeding along different lines the courts of other jurisdictions have reached the same result as to the liability of a bank director in a common law action of deceit for false statements as to the condition of the bank, where the duty to make such a statement was or was not imposed and the penalty prescribed for a violation of such duty. The principle upon which the directors have been held liable in those cases is that they knew the statement to be false, not merely that they might, by ordinary care, have known that fact, and that, if they acted in making such statements in good faith, upon details furnished by the ordinary managers and clerks whom they have employed, they can not be held liable in a common law action of

deceit. [Pierratt v. Young (Ky.), 49 S. W. Rep. 964; Cowley v. Smyth, 46 N. J. Law 380; 1 Cook, Stock, Stockh. & Corp. Law (3 Ed.), section 158.]  By this, however, it must not be understood that no action for deceit will lie against a director of a corporation, banking or otherwise (there is no difference), who has made false and fraudulent representations as to the condition of the corporation, whereby others have been misled and damaged.  Such misrepresentations need not be personally made, but may consist of voluntary reports or prospectuses which are false, and made fraudulently, and published or circulated. [1 Mor. Priv. Corp.(2 Ed.), section 573.]  But this rule can not be invoked in this case, for all evidence of this kind was withdrawn by the plaintiff, so the referee reports, and the right of recovery was placed squarely upon the reports made to the Secretary of State.  For these reasons the circuit court was right in entering judgment for the defendants on the deceit count of the petition.

III.   It is urged, however, that the circuit court had no power to set aside the findings of fact by the referee, and make findings itself, but that it must accept the report as to matters of fact, or else set it aside, as in cases at law with reference to the verdict of a jury.  This contention finds support in Lingenfelder v. Brewing Co., 103 Mo. 589.  But in that case both sides conceded and contended that such was the law, and the court treated the case as counsel had done.  But in Tobacco Co. v. Walker, 123 Mo. loc. cit. 671, the question was contested and decided.  There it was held: "In causes wherein the court may lawfully direct a compulsory reference, it may likewise act upon the evidence reported by the referee, and find therefrom different conclusions of fact from those reported by the referee.  This should now be taken as settled law, under the rulings in Hardware Co. v. Wolter, 91 Mo. 484, and State ex rel. v. Hurlstone, 92 Mo. 327, without reopening the question they adjudged.  It was hence entirely competent for the trial court, in the case at bar, to set aside

Utley v. Hill.

the finding of the referee in favor of plaintiff, and then to find for the defendants upon the evidence reported by the referee." This is the true rule; for while this court, on appeal, has always treated the report of a referee as a special verdict, and refused to disturb it if there was substantial evidence to support it (Berthold v. O'Hara, 121 Mo. loc. cit. 97), still the power of the circuit court is very different; for in such cases, a jury being waived, the case is triable before the court, and because the court has not the time to try such cases it calls in the aid of a referee to take the testimony. The referee's power is limited to recommending a judgment. The duty and responsibility as to the judgment rests upon the court. The referee can aid, but not bind, the judge. And, with all the evidence before the court, it would be a useless and expensive proceeding to refer the case to the same or another referee; for, perchance, the referee would find the facts the same way again, and so the expensive luxury would have to be repeated, until some referee could be found who would find the facts as the judge all the while believed they should be found, and as he could and should have found them upon the coming in of the first report. After full investigation and this protracted discussion, no error has been found in the action of the trial court, and its judgment is therefore affirmed. All concur, except *Robinson, J.*, absent.