# WEBB, Appellant, v. ROCKEFELLER et al.

### Division Two, March 29, 1906.

1. **CORPORATION: Capital Stock Not Paid: Liability of Incorporators.** The incorporators of a *de facto* corporation, to which the Secretary of State has issued a certificate of incorporation, are not liable to a creditor of the company, simply because the full amount of capital stock subscribed for by them was not paid up, as stated in the articles of association, nor because such creditor, believing that the capital stock had been paid up, in good faith extended credit to the company.

2. ———: ———: ———: **Fraud and Deceit.** The creditor of a corporation, whose articles of association falsely stated that all its capital stock was subscribed and fully paid up, cannot maintain an action for fraud and deceit against the incorporators, upon the theory that he read those articles, believed them and in reliance upon the representations made therein .as being true extended credit to the company, and such statements being false he was injured thereby.

3. ———: ———: ———: ———: **Purpose of Statutory Requirements.** The statute (sec. 1312, R. S. 1899), requiring that the articles of association shall set out the amount of the capital stock of the corporation, that the same has been bona-fide subscribed, and that one-half thereof has been actually paid up in lawful money and is in the custody of the persons named as the first board of directors, prescribes the conditions precedent for obtaining a certificate of incorporation from the Secretary of State and for obtaining a charter to do business in this State, but does not impose those requirements for the purpose of enabling the corporation to procure credit from those who do business with it as such.

4. ———: ———: ———: ———: **Partners.** It does not follow that because the incorporation of a company was a fraud upon the State, it was likewise a fraud upon individuals having dealings with it. An individual having dealings with the corporation as such cannot maintain, as a ground for holding its incorporators liable to him as copartners, that their failure to pay for the stock issued to them, was a fraud upon him. If the company was a corporation, it was not a partnership; if a corporation, its stockholders are liable to its creditors to the extent of their unpaid stock, and the law affords a remedy to such creditors to enforce that liability. [Disapproving, on this point, Hyatt v. Van Riper, 105 Mo. App. 1. c. 671.]

Webb v. Rockefeller.

5. ——: ——: ——: ——: **Necessary Allegations and Proof.** In order to hold one individual liable to another for fraud and deceit, it is indispensable to allege and prove the making by defendant of the representation, and that it was false, and either known by the party making it to be false, or so made as to imply that the maker knew it to be true, and that it was fraudulently made for the purpose of inducing defendant to give a credit which he would not otherwise have given; and it must be made to the defendant, or for the purpose of coming to his knowledge, or to the knowledge of a class of persons to which he belongs and thereby including him; and it must be alleged and proved that defendant relying upon it gave the credit which it was the purpose of the person making it to obtain. And the officers and stockholders of a corporation are liable for fraud and deceit upon the same grounds that individuals who are not incorporated are. But. statements made in the articles of association by them were addressed to the Secretary of State, and not to a subsequent creditor of the corporation, and if he had no knowledge that such statements were false at the time he extended it credit and did not extend it credit in reliance upon their being true, he cannot maintain an action against the incorporators for fraud and deceit.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*H. W. Currey* and *R. W. Coleman* for appellant.

(1) The judgment of the court sustaining a general demurrer is erroneous if the facts stated in the petition authorize a recovery upon any theory. State ex rel. v. Edmondson, 71 Mo. App. 172. (2) The Constitution and statutes of this State require the capital stock of a manufacturing corporation to be paid in money or money's worth, and forbids the issuing of stock or bonds of a corporation "except for money paid, labor done or property actually received;" and provides that all fictitious issue of corporate stock shall be void. Constitution, art. 12, sec. 8; R. S. 1899, sec. 962. And when a corporation is sent forth into the

commercial world accredited by the incorporators with being possessed of a specified capital, every person dealing with it, unless otherwise advised, has the right to extend credit to it on the faith of the fact that its capital stock has been paid and that the money, or its equivalent, in property, will be forthcoming to respond to his legitimate demands; and in this State, no countenance or toleration is given to the formation of a business corporation, except when all the capital stock has been bona fide and in good faith subscribed, and at least one-half thereof actually paid into the treasury in money or money's actual equivalent at the time of the organization. And, whenever persons seeking corporative protection from individual liability have failed to comply with the statutory prerequisites made necessary to the obtaining of a corporate charter, and debts have been contracted by the incorporators in the name of the corporation on the faith that such prerequisites had been complied with, the court, while differing in naming the liability—whether in the nature of copartners or resting upon the ordinary principles of contract, and agency, or upon the grounds of fraud and deceit—have agreed in holding liable, for such debts, in some form, all who have engaged in the procuring of the charter of incorporation. Welchenberg v. Bank, 64 Fed. 90; Steam Stone Cutter Co. v. Scott, 157 Mo. 520; Hequembourg v. Edwards, 155 Mo. 514; Vancleve v. Berkey, 143 Mo. 109; Berry v. Rood, 168 Mo. 316; Patterson v. Arnold, 45 Pa. St. 410; McHose v. Wheeler, 45 Pa. St. 40; Barnes v. Beck, 83 Ga. 471; Farmers, etc., v. Floyd, 47 Ohio St. 525; Coal Co. v. Settle, 54 Kan. 424; Walton v. Oliver, 49 Kan. 107; Slocum v. Head, 105 Wis. 431, 50 L. R. A. 324; Bergeron v. Hobbs, 96 Wis. 614; Detroit Electrical Works v. Railroad, 29 S. W. 412; Water Works Co. v. Aspen, 5 Colo. App. 12.

*Gage, Ladd & Small* and *Frank Hagerman* for respondents.

GANTT, J.—This suit was begun February 4, 1902, by the plaintiff filing a petition in the office of the clerk of the circuit court of Jackson county, at Kansas City. The defendants were duly served and filed their demurrer to the petition, which said demurrer was sustained on the 20th of June, 1903, and final judgment rendered in favor of the defendants on June 27, 1903.

The facts stated in the petition are summarized by the plaintiff as follows:

"First. That on the 27th day of November, 1899, the defendants, and Frank Siegel and William Askew, signed and filed in the office of the recorder of deeds for Jackson county, and a certified copy thereof, subsequently, in the office of the Secretary of State, articles of association, and obtained a corporate charter, wherein it was specified that they were a body corporate, under the name of 'Siegel-Sanders Live Stock Commission Company.' That said articles of association specified: (a) That the name of the company should be Siegel-Sanders Live Stock Commission Company; (b) that the capital stock of the company should be $250,-000, divided into 2,500 shares of the par value of $100 each; (c) that all of said stock had been bona-fide subscribed and all thereof actually paid up, and was in the hands of the persons named as the first board of directors; (d) that defendant Frank Rockefeller had subscribed for 1,000 shares, that defendant Swain had subscribed for 500 shares, that defendant Matchette had subscribed for 250 shares, and that Frank Siegel had subscribed for 500 shares, and William Askew had subscribed for 250 shares.

"Second. That all of the capital stock was not, in fact, bona-fide subscribed and that one-half of the capital stock was not, in fact, paid up.

"Third.  That the subscriptions of Frank Siegel and R. D. Swain were not bona-fide but were simulated only.

"Fourth.  That Siegel never paid any part of his subscription and had an agreement with the defendants that he was not to pay the same, and the same as to Swain.

"Fifth.  That the incorporators agreed at the time of signing the articles of association that the capital stock should not be paid, but that they would obtain the charter and use it as a shield from individual liability.

"Sixth.  That the defendants were named as the first board of directors and were its officers, and that the company never had $250,000, nor one-half that amount.

"Seventh.  That they dealt and contracted plaintiff's debt in the corporate name.

"Eighth.  That plaintiff, in good faith, believed the corporation had a paid-up capital of $250,000, and extended credit to the corporation on such faith, and parted with his money to the corporation, being deceived by the representation that the company had $250,000 capital paid up.  And a prayer for judgment. We now ask the court to adjudge that the petition states a cause, and reverse and remand the case."

I.  The appeal in this case involves a number of the questions discussed and decided in First National Bank of Deadwood v. Rockefeller et al., reported at page 15 of this volume.  The pleader in this case, however, alleges a perfect formal compliance by the defendants and Siegel and Askew with the statutes of this State, in procuring an incorporation of the Siegel-Sanders Live Stock Commission Company.  It is not claimed in this petition that any of the original incorporators failed to acknowledge the articles of association, which were filed in the office of the recorder of deeds of Jackson county, and a certified copy thereof

subsequently filed in the office of the Secretary of State;
on the contrary, it is alleged that all of the steps pre-
scribed by the statute as a matter of form were duly
and literally complied with, and that a corporate char-
ter was issued to them by the Secretary of State on
the first day of December, 1899. But it is alleged in
this case, as in the Deadwood Bank case, that all the
capital stock of the said company was not in fact bona-
fide subscribed, and that one-half thereof was not in
fact paid up, and that the incorporators agreed at the
time of signing the articles of association that the cap-
ital stock should not be paid in full, and that plaintiff
in good faith believing that the corporation had a paid-
up capital of $250,000, extended credit to it on such
faith, and parted with his money to the corporation,
being deceived by the representation that the company
had $250,000 capital paid up.    Learned counsel for
plaintiff does not charge anywhere in his petition that
the defendants by reason of the aforesaid premises
became and were copartners and liable to him as such.
In fact, learned counsel ingenuously confesses that he
has not named the cause of action upon which he seeks
to recover, but has left it to the court to denominate it.
For the reasons assigned in First National Bank
of Deadwood vs. these same defendants, it must be held
that the defendants are not copartners and liable as
such to the plaintiff merely because the full amount of
the capital stock subscribed for by them in the original
articles of association, was not paid up, either to the
first board of directors at the time of the organization
of the corporation, or into the treasury of said cor-
poration at that time. The allegations of the petition
on their face declare that the Siegel-Sanders Live
Stock Commission Company was a *de facto* corporation
by virtue of the articles of incorporation issued to it
by the Secretary of State prior to the incurring of
the debt, if any, for which plaintiff brought this ac-
tion.

II. It remains then to be seen whether the action can be sustained upon the theory of fraud and deceit. If we grasp correctly the contention of the plaintiff on this point of the case, it is that as our statute (section 1312, Revised Statutes 1899), requires that the articles of association shall set out the amount of the capital stock of the corporation, the number of shares into which it is divided and the par value thereof, and that the same has been bona-fide subscribed and one-half thereof actually paid up in lawful money of the United States and is in the custody of the persons named as the first board of directors or managers, and that as the defendants and their associates stated in their articles of association that the capital stock of the Siegel-Sanders Live Stock Commission Company should be $250,000 and that all of said stock had been bona-fide subscribed and all thereof actually paid up, and was in the hands of the persons named as the first board of directors, and that as it is admitted that this statement in the articles was untrue, plaintiff was deceived by this representation made in the articles of association and parted with his money to the corporation. There is no allegation in the petition that the plaintiff knew at the time of advancing his money, as alleged, that the company was or claimed to be a corporation under the laws of this State, or that he had any knowledge of the articles of association or the contents of them. But plaintiff insists that in dealing with said commission company, he was conclusively presumed to know of the required articles of association made, filed and recorded by the defendants and of the terms, provisions, statements and representations therein made by the defendants. But conceding that he had known of the filing of the articles of incorporation and had read them before giving credit to the company, and had given credit upon the faith of them, the question then arises whether upon these facts alone and the falsity of those statements as to the payment

for the stock, he can maintain an action as for fraud and deceit.

In Priest v. White, 89 Mo. 609, the action was for deceit against two of the original subscribers and incorporators of the Jackson Coal & Mining Company. The petition stated the indebtedness of the Coal & Mining Company to the plaintiff, and then alleged in substance that Bell and Hardin and two others each subscribed for $25,000 of stock in the said coal company and conspired together to cheat the corporation of its stock with a view of converting the same to their own use, and for the purpose of procuring money on worthless security; that having become officers of the corporation and there being no other stockholders, they had certificates of stock issued to themselves as paid-up stock, thereby claiming that the company had sold $100,000 of stock for cash at par, when nothing had been paid on the stock; that plaintiff gave credit to the corporation upon the belief that it had $100,000 invested in property and without notice that the stock had been fraudulently issued, and that by the said fraudulent acts, he was induced to part with his money. It appeared in evidence that as a matter of fact, the subscribers had turned over to the corporation property worth only about $12,000. The plaintiff in that case did not reduce his demand to judgment against the corporation, and the plaintiff in this case has not, nor did he seek to hold the defendants as owners of unpaid stock, nor did he proceed in equity to follow the money or property wrongfully abstracted or withdrawn by the officers or stockholders. This court, through Judge BLACK, among other things, said: "In the next place, if it be conceded to the plaintiff the most he can claim, and that is, that these incorporators committed a fraud upon the corporation, still this does not give him, as a creditor, an action for fraud and deceit. The wrong was a wrong to the corporation, and not directed to any creditor or creditors. It might affect the credit of the

company, but it does not follow that every creditor may sue the incorporators at law. 'The wrong committed by the officer of a corporation which affects the stockholders generally, through their interests in the corporation, is not a wrong to them as individuals, but to the corporate entity.' [Cooley on Torts, 518.] So, too, a wrong to the corporation which may and does affect the credit of the company and the creditors generally is not a wrong to them as individuals, and they cannot maintain an action as for a tort.''

In Utley v. Hill, 155 Mo. 232, an action was brought by a depositor in the Bank of Slater against the directors thereof, to recover $8,000, lost by the failure of that bank. The statute, then as now, required every banking corporation to furnish to the Secretary of State, when required by him, a statement, verified by the president and cashier and attested by three directors, of the actual condition of such corporation at the close of the business on the day designated. It also required this statement to be published in one or more daily newspapers published in the city or county where the bank was located, and in such a weekly paper, if there was no such daily, and a copy to be posted in the banking house accessible to all. It was alleged in that case that a false statement had been made and published and that the same had been posted in the banking house of the bank; that the plaintiff had read it, and relying upon it, had made his deposit. It was held that the action could not be maintained for two reasons: That the duty of making the statement was a duty imposed by law, and that the law prescribed a punishment for the violation of it. MARSHALL, J., speaking for the court, said: ''Nor can a false statement made by directors of a bank to the Secretary of State be made the basis of a common-law action for deceit. The reason is plain. The law exacts the statement; hence, it is not voluntarily made. The statement is

required to be made to the Secretary of State, so that he may take steps to close the bank if it is dangerous to the welfare of the people for it to continue business, but it is in no sense a statement made by the directors with intent to induce persons to deposit their money in the bank, and therefore a common-law action of deceit cannot be predicated upon it.''

In Hunnewell v. Duxbury, 154 Mass. 286, it appears that by the statute of Massachusetts every foreign corporation, before transacting business in the Commonwealth, was required to file with the commissioner a copy of its charter, a certificate of incorporation, and a statement of the amount of its capital stock and the amount paid in thereon to its treasurer, but if any part of such payment had been made otherwise than in money the statement must set forth the particulars thereof, and such statement must be subscribed and sworn to by its president and treasurer, and by a majority of its directors or others having the powers of directors. In that case the corporation was a foreign corporation, organized under the laws of Maine. It filed with the commissioner of corporations a certificate containing the above statements, duly sworn to. The plaintiff had taken notice of the contents of that certificate, and had it examined by an attorney whom he employed for that purpose, and he relied upon its statements in accepting the notes of the corporation. The statements were false and the notes proved worthless, and he sued the defendants in an action of deceit based upon the falsity of those statements. The Supreme Judicial Court of Massachusetts said: ''To sustain such an action, misrepresentations must either have been made to the plaintiff individually, or as one of the public, or as one of a class to whom they are in fact addressed, or have been intended to influence his conduct in the particular of which he complains. This certificate was not communicated by the defendants, or by the corporation, to the public or to the plaintiff. It

was filed with a State official for the definite purpose of complying with a requirement imposed as a condition precedent to the right of the corporation to act in Massachusetts. Its design was not to procure credit among merchants, but to secure the right to transact business in the State. The terms of the statute carry no implication of such a liability. Statutes requiring similar statements from domestic corporations have been in force here since 1829, and whenever it was intended to impose a liability for false statements contained in them there has been an express provision to that effect; and a requisite of the liability has uniformly been that the person to be held signed, knowing the statement to be false. . . To hold that the statute of 1884, chap. 330, sec. 3, imposes upon those officers of a foreign corporation who sign the certificate, which is a condition of its admission, the added liability of an action of deceit, is to read into the statute what it does not contain. If such an action lies, it might have been brought in many instances upon representations made in returns required of domestic corporations, and yet there is no instance of such an action in our reports. In Fogg v. Pew, 10 Gray 409, it is held that the misrepresentations must have been intended and allowed by those making them to operate on the mind of the party induced, and have been suffered to influence him. In Bradley v. Poole, 98 Mass. 169, the representations proved and relied on were made personally by the defendant to the plaintiff, in the course of the negotiation for the shares the price of which the plaintiff sought to recover. . . . Nor do we find any English case which goes to the length necessary to sustain the plaintiff's action. . . . In the case at bar, the certificate was made and filed for the definite purpose, not of influencing the public, but of obtaining from the State a specific right, which did not affect the validity of its contracts, but merely relieved its agents in Massachusetts of a penalty. It was not addressed to or

intended for the public, and was known to the plaintiff only from the search of his attorney. It could not have been intended or designed by the defendants that the plaintiff should ascertain its contents and be induced by them to take the notes. It is not such a representation, made by one to another with intent to deceive, as will sustain the action. Its statements are in no fair sense addressed to the person who searches for, discovers, and acts upon them, and cannot fairly be inferred or found to have been made with the intent to deceive him.''

In Hindman v. First Nat. Bank, 112 Fed. 931, in the United States Circuit Court of Appeals, the facts were that under the laws of Kentucky, any insurance company desiring to do business in the State could not begin business until all of its capital stock had been actually paid in any case, nor until the State insurance commissioner should be satisfied that this was the fact and should issue his license accordingly. On December 31, 1892, the insurance commissioner authorized the company to begin business and issued a certificate or license, which among other things certified that the company had a paid-up capital of $200,000, and a net surplus of $48,182.90, which is in cash and deposited in the First National Bank of Louisville as shown by the certificate of the cashier of said bank, and sworn to by the president and secretary of said company. The facts stated in the affidavit of the cashier and in the certificate or license, were false, and the plaintiff lost his money. Circuit Judge LURTON, for the court, among other things said: ''To what extent did the plaintiff have a right to rely upon the truth of the representations contained in the cashier's certificate? Some direct connection between the bank and the plaintiff in error in the communication of this certificate is essential to a recovery. If the statement was addressed to, and intended only to influence the action of, the State insurance commissioner in respect to the licensing of the

insurance company, he cannot sustain a recovery, even though he and others may have been led into the purchase of the shares of the insurance company as a consequence of the action of the insurance commissioner in admitting the company to do business upon the representation of the bank's certificate. The plaintiff's action, in the aspect of it now under consideration, is for fraud and deceit, and such an action must be bottomed upon false representations made to him, and with intent that he should be influenced thereby. The plaintiff does not sufficiently connect himself with the misrepresentations by the bare fact that he bought stock in a company which was improperly admitted to do business upon representations addressed to the State commissioner. The injury in such a case is too remote. In Bedford v. Bagshaw, 4 Hurl. & N. 538, an action was sustained against certain promoters and managers of a company who had made false statements in respect to the capital of the company in order to secure its insertion in the official lists of the stock exchange. The plaintiff, knowing that the rules of the stock exchange admitted no stocks to its lists until twothirds of the shares had been paid up, bought on the exchange in reliance that the shares so bought had been paid up accordingly. This proving not to be the case, the plaintiff was suffered to recover, although the false representation had been made to the committee of the stock exchange, and not to the plaintiff directly. That decision was subsequently overruled in Peek v. Gurney, L. R. 6 H. L. 377. Lord CHELMSFORD, in commenting on the decision, said: 'The action was brought upon the allegation of a false representation made to the plaintiff. But no representation at all was made which reached either his eyes or his ears. From his knowing the rules of the stock exchange, he assumed that a certain representation had been made, and acted upon it,' In Peek v. Gurney, a descriptive prospectus was put forth by directors of a company, in reliance upon which

the plaintiff bought shares on open market. It was held that the prospectus in its terms was not an invitation to the public ultimately to become holders of shares, but to join the company at once by becoming original allottees of shares, and that only those drawn in by the misrepresentations of the prospectus to become allottees could have a remedy in action for the deceit. In line with Peek against Gurney, is the case of Hunnewell v. Duxbury, 154 Mass. 286.'' After stating the substance of the decision of the Massachusetts court, which we have already noted, the learned judge proceeds to say, in Hindman v. Bank: ''The Kentucky statute carries no implication of civil liability for a false statement, although it does make the giving of a false statement to the commissioner a criminal offense. The right of one of the public who has sustained a loss by the wrongful setting on foot of an insurance company whose capital has not been paid in, and of one who has bought shares or given credit to such a company in reliance upon the truth of representations made to the commissioner only for the purpose of inducing his action, must depend upon the general principle of law in respect of actions for false representations. It has never been a ground of action that the defendant made a dishonest representation, and that the plaintiff had relied upon it and sustained injury. The moral obligation to speak the truth is not ground for a civil action, unless the misrepresentation was intended to induce the very action by the plaintiff which has resulted in his damage. [Cooley on Torts, chap. 493; Wells v. Cook, 16 Oh. St. 67; Barry v. Croskey, 2 Johns. & H. 1.] However lamentable the eventual results of a dishonest representation to persons who in reliance thereon have come to grief, they cannot recoup such losses unless they are able in one way or another to bring themselves within the class of persons for whom the representation was intended.''

Applying the principles of these cases, our own as

well as those of the Massachusetts court and the Federal
and English courts, it must be held that the certificate
made by the incorporators to the Secretary of State
and the facts therein stated, are made for the purpose
of complying with the requirements of our laws, im-
posed as a condition precedent to the obtaining of a
charter to do business as a corporation in this State,
and not for the purpose of procuring credit from those
who may do business with the corporation as such. And
the foregoing cases and what we have said here in no
sense conflicts with those cases in which the directors
or officers of corporations have been held liable for fraud
and deceit on account of false representations made as
to the solvency of such corporations subsequently to
their incorporation by which creditors are defrauded.
Of this latter class of cases may be mentioned Steam
Stone Cutter Company v. Scott, 157 Mo. 520.    In that
case the petition alleged that after said corporation was
incorporated and the certificate issued as aforesaid and
after the stock was paid for in a fraudulent manner
aforesaid and in no other way, the defendants falsely
and fraudulently represented to the plaintiff that said
stock of said corporation had been bona-fide and fully
paid up, when the said defendants then and there well
knew that said stock had never in fact been paid by
them or either of them, but that such payment was a
mere pretense and sham, and upon the faith of the
truth of such representations the plaintiff sold and de-
livered to said corporation goods, wares and merchan-
dise in payment of which debt the said corporation ex-
ecuted to the plaintiff the notes sued on.    In that case
it was said by this court: "Besides, under the allega-
tions of the petition and the findings of the court the de-
fendants are liable independent of the statute, upon the
ground that they made false representations upon
which they induced the plaintiff to give the credit to the
corporation that resulted in the debts sued for.    Under
that theory the defendants are jointly and severally

liable at common law, although one or more of them may not have been indebted at all to the corporation.'' It is clear from the report of that case that this court, in speaking of the false representations, had no reference to the representations contained in the articles of association, but to the letter written to them after the incorporation in which the defendant stated that the company was incorporated August 1, 1889, on a fully paid-up capital of $70,000.

In First National Bank of Deadwood v. Rockefeller, we have had occasion to pass upon the effect of a false statement in the articles of association that the stock had all been bona-fide subscribed and all paid up, and what effect such statement had upon the granting of a charter by the Secretary of State or other department of the government authorized so to do. From the great weight of authority we reached the conclusion that while such a statement was a fraud upon the State and would justify the annulling and forfeiting of the charter by a direct proceeding on the part of the State, a creditor dealing with such a *de facto* corporation thus organized could not inquire into and assail the corporate existence on that ground in a collateral proceeding like the present. But our attention is called in this case to the decision of the Kansas City Court of Appeals in Hyatt v. Van Riper, 105 Mo. App. 664, l. c. 671, wherein that court discussed the liability of the incorporators to be held liable as copartners. It was conceded in that case that there were no actual false representations made by the defendant to the plaintiff as to the capital stock having been fully paid up to induce the latter to enter into the contract, but the court in that case said: ''The defendants in procuring the incorporation without having paid any part of their subscriptions to the stock of the corporation no doubt committed a fraud upon the State for which upon the hearing of a writ of quo warranto its charter would be annulled, but its existence as a corporation can not

be inquired into in this proceeding. If, however, its incorporation under the circumstances was a fraud upon the State, it was likewise a fraud upon third persons having dealings with it. And to so hold would in no sense be challenging its corporate existence. It is not a party to the suit, and notwithstanding plaintiff says it has no corporate existence, we think differently.'' Accordingly the conclusion was reached that upon this ground alone the defendants could be and were held liable as copartners.

Unquestionably the learned Court of Appeals, in our opinion, was correct in holding that a failure to pay any part of their subscriptions to the stock by the incorporators, was a fraud upon the State, for which the State, in a direct proceeding, might have the charter annulled. It was also correctly held in that case that the existence of the corporation could not be inquired into in that collateral proceeding. But we cannot give our assent to the remaining proposition, in the language quoted above, to the effect that because the failure to pay the full amount of their subscriptions was a fraud upon the State it was likewise a fraud upon third persons having dealings with it, if, by this, it is meant that any individual dealing with the corporation as such, could allege such failure by the incorporators to pay their subscriptions to stock, as a ground for holding the incorporators liable as copartners to such third person upon the sole ground that such failure to pay them was a fraud upon him. On the contrary, the great weight of authority is to the contrary. We have fully reviewed the authorities on this subject in First National Bank of Deadwood v. Rockefeller, and reached the conclusion that the rule is well established that the courts are bound to regard a company, incorporated according to all the required forms of law, as a corporation so far as third parties are concerned, until it is dissolved by judicial proceeding on behalf of the government which created it. If a corporation, it is not a

partnership; if a corporation, its members are liable to creditors of the company to the extent of their unpaid stock, and in this State various remedies are provided, as pointed out in the Deadwood Bank case, to enforce that liability. We accordingly find ourselves unable to agree with our brethren of the Kansas City Court of Appeals on this point, and with all due respect to the members of that court, so much of that opinion as holds that the incorporators may be charged as partners in a collateral proceeding by a creditor of the company, on the sole ground that a failure to pay for their stock for which they have subscribed is a fraud, is disapproved to that extent. As said in Berry v. Rood, 168 Mo. l. c. 331: "But when they attempt to hide their individual liability in a corporation and launch upon the business community a company which they proclaim as solemnly as men can proclaim anything. has a full paid-up capital of $300,000 and invite confidence accordingly, when they well know that, so far as then developed, it has not five per cent of the amount available for use in the treasury, they violate both the letter and spirit of our laws on this subject and render themselves individually liable, to creditors who have been misled, to the extent of their unpaid stock." As held in Hindman v. Bank, 112 Fed. 931, the officers and stockholders of corporations are liable for actions of deceit upon the same grounds that individuals who are not incorporators are liable. In order to hold one individual liable to another for fraud and deceit, it is indispensable to allege and prove the making by the defendant of the representation, and that it was false and either known by the party making it to be false, or so made as to imply that the maker knew it to be true, and that it was fraudulently made for the purpose of inducing the party complaining to give a credit which he would not otherwise have given; that it was made to the party complaining or made for the very purpose of coming to his knowledge or that of a class

of persons to which he may belong and thereby including him, and that relying upon it he gave the credit which it was the purpose of the person making it to obtain.  As already said, the representation upon which this action is founded was made in a statement required by law for the formation of a corporation.  It was not made to the plaintiff and it is not even alleged in the petition that the plaintiff knew, at the time of advancing his money, that the company was, or claimed to be a corporation under the laws of Missouri, or that he had any knowledge of the articles of association or the contents of them, but even if he had, the representations made in those articles were not addressed to the plaintiff, but to the Secretary of State for the purpose of forming and perfecting a corporation, and the great weight of authority is that an action for fraud and deceit cannot be predicated upon a statement or representation thus made for the purpose merely of obtaining a certificate of incorporation.

The circuit court properly sustained the demurrer to the petition and its judgment is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.