## ALVIN FRUIT & TRUCK ASSOCIATION, Respondent, v. WILLIAM HARTMAN, Appellant.

### St. Louis Court of Appeals, December 14, 1909.

1. SALES: Instructions: Submitting Question of Reasonable Price, Where Specific Price was Agreed Upon, Error. In an action for the recovery of the purchase price of goods sold, an instruction requiring the jury to find the price for which they were sold was reasonable, where a specific price was agreed upon, was erroneous.

2. FRAUD AND DECEIT: Sales: Showing Necessary to Warrant Recovery. In order for a buyer to recover because of misrepresentation, he must show reliance on the false representation, that it was one adapted to deceive a buyer of ordinary prudence, and intention on the seller's part to deceive.

3. SALES: Warranty. The right of a person to redress for a broken warranty does not stand upon a fraudulent representation.

4. ———: ———: What Constitutes Express Warranty. Where a seller of strawberries affirmed they were a certain variety, and the buyer bought relying on the affirmation, there was an express warranty that they were such variety, though the word "warranty" was not used.

5. ———: ———: ———. A warranty is express when the seller makes an affirmation about the article to be sold, pending the treaty of sale, upon which it is intended the buyer shall rely in making the purchase; and this is certainly true if the affirmation is intended by both parties to be part of the contract of sale.

6. ———: ———: Express Excludes Implied Warranty, When. An express warranty will not exclude an implied one about other matters, but will as to matters the former embraces.

7. ———: ———: Action for Breach: What Necessary to Prove. In an action for the price of strawberries sold, where defendant filed a counterclaim asking for damages for breach of an express warranty that the berries were of the "fancy Klondike" variety, sound and in condition to arrive at destination in a salable condition, in order to recover thereunder, it devolved upon defendant to prove the berries were guaranteed to be "fancy Klondikes" and were not, or if they were, that they were not in proper condition for shipment or sale.

8. ———: ———: **Warranty Breached, When.** Where a seller of berries warranted them to be of a certain variety, there was a breach of warranty if the berries were not of that variety, though they reasonably answered the description of such berries.

9. ———: ———: **Instructions: Instruction not Based on Evidence Erroneous.** Where defendant claimed damages for breach of warranty on a sale of strawberries, and the evidence showed that defendant's agent was about plaintiff's place of business while the berries were being packed and loaded on cars, and saw and knew their quality, but it did not appear that defendant, or any one representing him, made an inspection, an instruction, referring to the car as inspected, packed, and loaded by defendant, was erroneous.

10. ———: ———: **Pleading: Recovery of Damages Confined to Theory of Petition.** Where defendant, in an action for the price of berries, did not demand in his counterclaim any recovery for damages suffered by the berries while in transit, he could have no recovery on such ground.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED.

*Frank K. Ryan* for appellant.

(1) Instruction number 1 for plaintiff purports to cover the entire case and directs a verdict for plaintiff on the statement of facts therein, if found to be true. Such an instruction must cover the case as made by the pleadings and evidence, and must not ignore the defenses, as done in said instruction number 1. Hoffman v. Parry, 23 Mo. App. 20; Flynn v. Union Bridge Co., 42 Mo. App. 529; Stokes v. Distillery Co., 64 Mo. App. 420; Stewart v. Emerson, 70 Mo. App. 482; State v. Davies et al., 80 Mo. App. 239; Boothe v. Loy, 83 Mo. App. 601; Shoe Co. v. Lisman, 85 Mo. App. 340; Shoe Co. v. Sheperd, 96 Mo. App. 698; Muncy v. Bevier, 124 Mo. App. 10; Percell v. Railroad, 126 Mo. App. 43; Haas v. Railroad, 128 Mo. App. 79;

Toncrey v. Railroad, 129 Mo. App. 596. (2) Instruction number 1 for plaintiff is in conflict with the other instructions in the case, and the error in giving number 1 is not cured by giving others which are contradictory. The only presumption permissible in such a case is that, as the instructions are conflicting, the jury disregarded the true for the false. Flynn v. Bridge Co., 42 Mo. App. 529; Berryman v. Cox, 73 Mo. App. 67; Oil Co. v. Drug Co., 74 Mo. App. 446; Herbert v. Shoe Co., 90 Mo. App. 305; Ross v. Railroad, 132 Mo. App. 472; Hovey v. Aaron, 133 Mo. App. 573; Butz v. Murch Bros., 137 Mo. App. 222; Bowen v. Epperson, 118 S. W. 528 (K. C. Ct. App.); Flori v. St. Louis, 69 Mo. 341; Juirk v. Elevator Co., 126 Mo. 279; Sheperd v. Transit Co., 189 Mo. 362; Russell v. Poor, 119 S. W. 433. (3) The assumption of fact and direct statement by the court, in plaintiff's instructions numbers 3 and 4, to the effect that defendant "inspected, packed and loaded the cars," constitutes reversible error. A trial court should not assume the existence of facts concerning which the testimony is conflicting, much less should it assume the existence of facts contrary to all the evidence in the case. Siegrist v. Arnot, 10 Mo. App. 197; Harlan v. O'Keefe, 38 Mo. App. 273; Dulaney v. Sugar Ref. Co., 42 Mo. App. 659; Wright v. Fonda, 44 Mo. App. 634; Glover v. Railroad, 129 Mo. App. 563; Haynor v. Light Co., 129 Mo. App. 691; Stone v. Hunt, 94 Mo. 475; Fullerton v. Fordyce, 121 Mo. 2; Hull v. St. Louis, 138 Mo. 618. (4) The use of the word "defendant" instead of "plaintiff" in instructions 3 and 4 given for plaintiff, was calculated to mislead the jury. Where such a mistake occurs under circumstances which make it questionable whether or not the jury was misled, the error is fatal to the judgment. Trustees v. Hoffman, 95 Mo. App. 488; Harrison v. Franklin, 126 Mo. App. 366; Stegman v. Berryhill, 72 Mo. 307; State v. Pettit, 119 Mo. 410. (5) The modification by the court of instructions 7, 8, 9 and 10, whereby the jury was told that

plaintiff, in response to an order for Fancy Klondikes, could furnish Fancy Klondikes, or such berries as would reasonably answer such description, was error. Defendant was entitled to receive the very goods ordered by him, and the jury should not have been given a roving commission to guess at what might "reasonably answer" the description "Fancy Klondikes." Catchings v. Hacke, 15 Mo. App. 51; Halpin v. Manny, 33 Mo. App. 388; Meyer v. Richards, 163 U. S. 415; Gossler v. Eagle Refinery, 103 Mass. 331; Schultze v. Goodstein, 180 N. Y. 248.

*Dalton & Harris* for respondent.

(1) Under the pleadings and the evidence in this case plaintiff's instruction number 1 was proper. (2) Appellant charges that instruction number 1 for plaintiff is in conflict with the other instructions in the case; but appellant nowhere specifies which of the other instructions he refers to, nor in what manner or particular the alleged conflict arises; so that, though challenging appellants statement on this point, the charge is too indefinite for intelligent discussion by us. (3) The third and fourth points made by appellant have reference to the same matter, and we shall discuss them as one. Manifestly, the alleged error complained of here, was an accidental typographical substitution of the word "defendant" for the word "plaintiff," but in a particular which, under the pleadings and all the evidence in this case, could not possibly have misled the jury; and hence it is immaterial. Bank v. Goldsoll, 8 Mo. App. 596; Linn v. Railroad, 10 Mo. App. 125; State v. Meals, 184 Mo. 244; Shortel v. St. Joseph, 104 Mo. 114; Burton v. American Guaranty Co., 96 Mo. App. 204; 3 Century Dig. cols. 1980-1988, sec. 4063; Suttie v. Aloe, 39 Mo. App. 38. (4) The court properly modified defendant's instructions 7, 8, 9 and 10, by adding the clause complained of by appellant. Irrespective of the modification of each of these instructions by the

court, they are each, even as requested, improper for other considerations, both because stating erroneous propositions of law and because being unwarranted under the evidence.

The following instructions were given to the jury, the italics indicating the court's modifications.  For plaintiff:

"1.  The court instructs the jury that if you find and believe from the evidence in this case that on or about the 27th day of March, A. D. 1907, at the town of Alvin, in the State of Texas, the plaintiff, Alvin Fruit & Truck Association, sold and delivered to the defendant, William Hartman, at said Alvin, Texas, a certain carload of strawberries, being referred to in the evidence as car C-47, containing 521 crates of strawberries at and for the price and sum of $1302.50, to be paid in cash upon the delivery of said berries; and if you further find that said strawberries at the time they were delivered to defendant at said Alvin, Texas, if you find they were so delivered, were then and there at that time in good and merchantable and marketable condition, and if you further find that the price charged for said strawberries at the time same were sold and delivered to defendant, if they were so sold and delivered, was reasonable; and if, having found the aforesaid statements to be true as of fact, you further find that plaintiff demanded payment of said $1302.50 from defendant on or about March 28, 1907, and that defendant did refuse at that time and has to this day refused and neglected to pay the same or any part thereof, you will find your verdict against defendant and in favor of plaintiff on plaintiff's petition for the sum of $1302.50, together with interest thereon at the rate of six per cent per annum since March 28, 1907, *unless you find the facts as stated in instruction number 8.*

"2.  The court instructs the jury that if you find and believe from the evidence in this case that the plaintiff

on or about March 27, 1907, sold and delivered to the defendant at Alvin, Texas, the car of strawberries, mentioned in plaintiff's petition and in the evidence as car C-47, and that said car was on the same day forwarded and shipped from said Alvin, billed to the defendant William Hartman, at St. Louis, Missouri, by way of the Wells-Fargo Express Company, all according to shipping, billing and routing instructions, given by said defendant or his agent, if you find that said defendant or his agent gave such shipping, billing and routing instructions, then the court instructs you that said express company was the agent of the defendant Hartman, in transporting said car of strawberries, and the plaintiff was in no way liable or responsible for any loss or injury to or deterioration in value in said strawberries, if any, which may have been occasioned by any improper handling or delays in transit by said express company, if you find and believe from the evidence that there was any such improper handling or delays in transit and if you find and believe from the evidence that said berries were injured or caused to deteriorate in value thereby.

"3.    The court instructs the jury that if you find and believe from the evidence in this case that in the purchase of the car of strawberries mentioned in plaintiff's petition, and referred to in the evidence as car C-47, the defendant was represented at Alvin, Texas, by J. H. McKnight, as defendant's agent, and if you find and believe from the evidence that while the strawberries which were shipped in said car C-47 were being inspected and packed and loaded into said car by defendant, that said McKnight had unrestrained access to the same and full opportunity to examine and inspect said strawberries and the operations of packing and loading the same, and that he knew the variety and quality and trade classifications of the strawberries that went into said car; and if you further find that said McKnight as such agent for defendant, thereafter ac-

cepted said carload of strawberries and gave instructions for the shipping, billing and routing of the same to defendant, then and under such facts, if you find and believe the same to be true, the court instructs you that the defendant is estopped and forbidden to deny that said strawberries were of the variety, quality and trade classification which he purchased, and that the defendant is bound under the law to pay to plaintiff the purchase price for same, and if you find and believe said facts to be true, as above set out, then you will find your verdict in favor of plaintiff on the plaintiff's petition without regard to what the condition of said berries was when they arrived in St. Louis *unless you find the facts to be as stated in instruction number* 8.

"4. The court instructs the jury that if you find and believe from the evidence in this case that in the purchase of the car of strawberries, mentioned in the second count of defendant's counterclaim and therein alleged to have been purchased from plaintiff on or about March 25, 1907, and being the car referred to in the evidence as car number 104, that the defendant was represented in the purchase of said car by J. H. McKnight, as defendant's agent at Alvin, Texas, and if you find and believe from the evidence that while the strawberries which were shipped in said car number 104 were being inspected and packed and loaded into said car by defendant, that said McKnight had unrestrained access to the same and full opportunity to examine and inspect said berries and the operations of packing and loading the same, and that he knew the variety and quality and trade classifications of the strawberries that went into said car; and if you further find that said McKnight, as such agent for defendant, thereafter and after said car had been shipped by plaintiff, and whilst the same was en route to Kansas City, purchased said car of strawberries for the defendant Hartman and ordered the same diverted en route

from Kansas City to the defendant at St. Louis, Missouri, then and in such case, if you find and believe the same to be true the court instructs you that the defendant is estopped and forbidden to deny that said strawberries were of the variety, quality and trade classification which he purchased and that the defendant is not entitled under the law to recover any sum from plaintiff on account thereof, and if you find and believe said facts to be true, as above set out, then you will find your verdict in favor of plaintiff and against the defendant on said second count of the defendant's counterclaim without regard to what the condition of said berries was when they arrived in St. Louis, *unless you find the facts to be as stated in instruction number* 8."

For defendant:

"7. The court instructs the jury that if they find from the evidence that in March, 1907, the plaintiff Alvin Fruit & Truck Association was engaged in the business of growing fruit and produce in Texas and selling same to the trade, and that plaintiff was aware that defendant William Hartman was then engaged in the fruit and produce business in St. Louis, Missouri, and was buying the berries in controversy for the St. Louis market, then there was an implied warranty by plaintiff that the berries which plaintiff sold defendant were merchantable and suitable to the St. Louis market; and if the jury further find that defendant Hartman ordered from plaintiff two cars of strawberries of the quality and kind known to the trade as Fancy Klondikes, then there was an implied warranty by plaintiff that the goods sold in response to said order were Fancy Klondikes, *or were such as would reasonably answer to such description.*

"8. The court instructs the jury that if they find the defendant did not have a reasonable opportunity to inspect said strawberries, and did not inspect them, before buying same, or that said berries were so packed and crated and loaded on cars by plaintiff as to deprive

defendant of a reasonable opportunity for inspecting same; and if the jury further find that plaintiff represented said strawberries to be Fancy Klondikes, and fit for shipment to St. Louis, and that defendant bought same relying upon such representations; or that plaintiff knew when it sold said strawberries that defendant was a fruit and produce merchant at St. Louis and was buying said berries for the St. Louis market; and if the jury further find that said strawberries were not fancy Klondikes, *or such as 'would reasonably answer such description,* or were damaged or unsound, or were not merchantable or suited to the St. Louis market, or that said berries were not in condition to stand transportation to St. Louis, Mo.; or to arrive there in a sound and salable condition, and did not so arrive, and that thereby defendant was damaged, then defendant is entitled to recover on his counterclaim for the damage, if any, so sustained by him.

9. The court instructs the jury that if they find in favor of defendant on his first counterclaim, with respect to the car bought on March 27, 1907, the agreed price for which was $1302.50, none of which was paid by defendant, they will allow defendant as damages on said first counterclaim such sum, not exceeding $708.50, as they find from the evidence will reimburse defendant for the amount, if any, paid by defendant for express on said car amounting to $265.00 and will also allow defendant the difference, if any, in the value of the berries in said car as they actually were *on arrival in St. Louis,* and what they would have been worth had they been Fancy Klondikes, *or such as would reasonably answer such description,* and merchantable and suited to the St. Louis market.

"10. The court instructs the jury that if they find in favor of defendant on his second counterclaim with respect to the car bought on March 25, 1907, and for which car defendant paid plaintiff the sum of $1237.50, they will assess defendant's damages at such sum, not

exceeding $1212.55, as they find from the evidence to be the difference in value of the berries in said car as they actually were *on arrival in St. Louis,* and what they would have been worth had they been Fancy Klondikes, *or such as would reasonably answer such description,* and merchantable and suitable to the St. Louis market.

"11. The court instructs the jury that the receipts for freight and the expense bills for same are only prima-facie evidence of the statements therein contained, and if the jury find from the evidence that the strawberries described in said papers were, in fact, received in bad order, then defendant is not bound by said statements in said receipts and expense bills, but is at liberty to contradict or explain said receipts and expense bills by other evidence."

The instructions requested by the parties were refused as asked, and given in the above form.

Plaintiff is a dealer in fruits and vegetables in the town of Alvin, Texas, and defendant a dealer in the same commodities in the city of St. Louis. In March, 1907, defendant, by J. M. McKnight, its agent in Texas, purchased two carloads of strawberries from plaintiff at Alvin, Texas. The berries were bought to be shipped to St. Louis, and the evidence for both parties is that one car was en route to St. Louis at the time it was sold, or on March 25th. The car shipped March 27th, was never paid for, and the purpose of the present action is to recover the price of it, $1302.50. It was a heavily loaded car, consisting of 521 crates. Defendant set up two counterclaims because of the condition of the two carloads of berries, designated respectively as car 104 shipped on the 25th and car C-47, shipped on the 27th. The averments of defendant respecting the two loads of berries are substantially the same, and are that both were represented and warranted to be the variety known as "Fancy Klondike," sound, merchantable, salable and in a condition to arrive at St. Louis in sound, merchantable and salable condition; that

strawberries known to the trade bt th at Alvin, Texas, and in St. Louis, Missouri, as Klondike, are of a peculiarly sound and firm nature, especially adapted to shipment to and handling at points distant from the point of growth and initial shipment; that the word "fancy" is a trade term of special significance and well known to dealers at Alvin, Texas, and St. Louis, to mean the best and soundest grade or quality of berry for shipping purposes. It is alleged defendant in making the purchase relied on plaintiff's warranty as to the variety, quality and condition of the berries; that contrary to the warranty the berries were not Fancy Klondikes, or sound, merchantable and salable, and were not in good condition to stand shipment to St. Louis, all of which plaintiff knew at the time the warranties and representations were made, but defendant did not know; that the berries arrived in St. Louis soft and in poor condition, and instead of being Fancy Klondikes were of sundry varieties not adapted to stand transportation between the point of shipment and St. Louis, their destination. It is further alleged said representations and warranties of the grade, quality, variety and condition of the berries, operated as a fraud on defendant, and were falsely and fraudulently made by plaintiff for the purpose of deceiving and cheating defendant; that the berries were so packed by the agents and servants of plaintiff in boxes and crates and so covered as to make it impossible for defendant to examine them to determine their quality or condition, and learn whether the warranties and representations were true and reliable. By reason of these matters defendant alleged he was damaged in the sum of $1212.55 in the purchase of those sold on March 25th and in the sum of $781.50 in the purchase of those sold March 27th. Judgment was prayed for those sums.

For plaintiff there was testimony to prove the berries were sold neither as the "Klondike" nor the "Fancy Klondike" variety, but simply as good berries which

McKnight, defendant's agent, saw and offered to buy; all but ten per cent of them being Klondikes; that McKnight was informed a full carload of Klondikes could not be furnished, but that all save ten per cent would be Klondikes; that the berries when shipped were sound and otherwise in excellent condition; there was no warranty about their grade or quality given or asked; McKnight did not ask for Klondikes; he showed a telegram from defendant merely ordering him to buy berries; he probably would have preferred Klondikes, but said nothing about wanting that variety; the berries were carefully inspected by an expert, in all respects conformed to the terms of the sale and were packed and loaded under the eyes of McKnight, who had every opportunity to see them before they were put in the cars and in fact did see them, though it is not claimed he made a formal inspection; the price was $2.50 per crate. The testimony for defendant is to the contrary and goes to prove most of the strawberries in both cars were neither Klondikes nor Fancy Klondikes, but were of several varieties, not of first-class grade, nor fit for shipment to St. Louis; when they arrived in St. Louis the juice was running out of them and they were soft and unsalable. McKnight testified Griffith, the sales-man of plaintiff who transacted the business with him, told him the carload bought on March 27th, contained 521 crates of Fancy Klondikes; that Griffith knew defendant wanted the cars to supply the eastern trade in St. Louis, and the car was inspected by C. S. Linder-man, an employe of plaintiff, but not by McKnight, who, however, was in plaintiff's warehouse at times while the berries of one carload were in course of packing and could have examined them but did not. McKnight also testified he bought the carload purchased on March 25th as containing 450 crates of Fancy Klondikes; that both carloads were bought as being said variety; wit-ness relied on the statement of plaintiff's officers that they were and made no examination, the cars being hur-

riedly loaded. The price was, according to the testi-
mony for defendant, $2.75 per crate. There was no di-
rect testimony the berries were in bad condition when
shipped from Alvin, but expert witnesses testified if
they were shipped in good condition, rightly packed and
kept well iced and otherwise properly cared for while in
transit, they would not have been in the state they were
in when received in St. Louis. The jury returned a ver-
dict in plaintiff's favor on its demand, and also on de-
fendant's counterclaims, and judgment having been en-
tered upon the verdict, defendant appealed.

GOODE, J. (after stating the facts).—1. We find
nothing in the record to show the berries were sold
without fixing the price or at a reasonable price. The
testimony for the parties disagreed at this point only in
respect of what the price was, plaintiff's witness saying
it was $2.50 a crate and defendant's that it was $2.75.
Hence there was no cause for requiring the jury to find
the price for which they were sold was reasonable.
This error was introduced by plaintiff's request, but
we call attention to it because the judgment must be
reversed on other grounds and probably there will be
a retrial.

2. Both the answer and the instructions confused
the distinct grounds of relief, false representation and
warranty, also the distinct and, in some measure, in-
compatible grounds of an express and an implied war-
ranty. For defendant to recover because of misrepre-
sentation, it must show ingredients of a case not es-
sential to recovery for breach of warranty; such as
reliance on the false representation, that it was one
adapted to deceive a buyer of ordinary prudence, and
intention on plaintiff's part to deceive. [Peers v. Davis,
29 Mo. 184; Webb v. Rockefeller, 195 Mo. 57.] It is
needless to say a party's right to redress for broken
warranties does not stand upon a fraudulent represen-
tation. [Halliwell Cement Co. v. Stewart, 103 Mo.

App. 182.] If plaintiff affirmed the berries sold were Fancy Klondikes and defendant bought relying on the affirmation, this amounted to an express warranty they were of said variety, though the word "warranty" was not used in the negotiation; and the court erred in the seventh modified instruction for defendant, in treating this warranty as an implied one. [2 Mechem, Sales, secs. 1234 et seq.; Graff v. Foster, 67 Mo. 512; Long v. Armsby Co., 43 Mo. App. 253; Danforth v. Crookshanks, 68 Mo. App. 253; Holloway v. Jacobs, 120 Pa. St. 583.] Judicial opinions occasionally say the law implies a warranty in such a case, but we consider the seller has expressed one. It has been said a warranty is express when the seller makes an affirmation about the article to be sold, pending the treaty of sale, upon which it is intended the buyer shall rely in making the purchase. [Danforth v. Crookshanks, supra; Biddle, Warranties, secs. 1 and 2.] This is certainly true if the affirmation is intended by both parties to be part of the contract of sale, as plaintiff contends was the intention in this case. [2 Mechem, Sales, secs. 1224, 1227, inclusive.] While it would be difficult to trace a line between representations and warranties so as to leave all cases which have been held to be the former on one side, and all held to be the latter on the other side, we entertain no doubt that if the strawberries in question were sold by plaintiff and bought by defendant as Fancy Klondikes, they were warranted to be that kind. An express warranty will not exclude an implied one about other matters, but will as to matters the former embraces. [Pavement Co. v. Smith, etc., Co., 17 Mo. App. 264; Hayner v. Churchill, 29 Mo. App. 676.] The allegations of defendant regarding plaintiff's warranties of the berries and their condition in respect of soundness, ability to stand shipment and salableness in St. Louis, constituted express warranties of the variety of the berries in controversy and their soundness, salable and shipable qualities. Moreover, the averments plainly say

the Klondike variety is a sound and firm berry suitable for shipment and sale in distant markets. There was no proof to support the allegation of an express warranty regarding the qualities of the berries, except in so far as those qualities were understood by the parties to be inherent in a Klondike berry. That is, there was no proof of a warranty in so many words, of the berries possessing qualities adapting them to shipment and sale in St. Louis. The answer alleged plaintiff knew defendant was buying the berries for the St. Louis market, and we suppose this averment induced the court to permit a recovery for the berries on an implied warranty of their fitness for that market. But the answer said nothing about an implied warranty, and considered in its full scope, it clearly declared only on an express one both as to variety and qualities. By ordering Klondike berries defendant took the risk of that variety being popular and salable in St. Louis, but did not thereby take the risk of their salableness in so far as this depended on their soundness of condition. The sum of the matter is that for defendant to recover on its counterclaim for a broken warranty, it must prove the berries were guaranteed to be Fancy Klondikes and were not, or if they were, that they were not in proper condition for shipment or sale; for instance, were green, or rotten, or had some other fault of condition.

3. Error was committed against defendant by modifying the seventh and eighth instructions so as to hold plaintiff had complied with the warranty if the berries were either Fancy Klondikes, or "such as would reasonably answer to such description." This alteration simply destroyed the force of the warranty. If the berries were sold and bought as Fancy Klondikes, defendant was entitled to have that kind of berries delivered to it and no substitution without defendant's consent, of another variety, which would reasonably answer the description, was a discharge of plaintiff's obligation. Fancy Klondikes might not have been superior to some

other variety; but the evidence goes to show they were better known and more salable; and if defendant for those reasons wanted that kind of berry and bought it, it was not right to deliver another variety, even though it would reasonably answer the description of the Fancy Klondike. [2 Mechem, Sales, sec. 1335 et seq., and citations in notes.]

4. Another error against defendant occurred in the third and fourth instructions granted for plaintiff, wherein both cars of berries were referred to as though they had been "inspected and packed and loaded into said car by defendant." That language implied an inspection by defendant, and in fact complete knowledge of the berries at the time they were put into the car; whereas it is not contended defendant, or any one representing it, made an inspection of the packing and loading of the berries. Regarded in the phase most favorable to plaintiff, the evidence only goes to prove McKnight, defendant's representative, was in and out of plaintiff's place of business while the cars were being inspected, packed and loaded, had opportunities to see them and know their quality, and in fact both saw and knew. The court gave plaintiff the benefit of McKnight's possible knowledge of the berries in instructions three and four granted for plaintiff.

5. The court properly refused to allow a recovery for damage suffered by the berries while in transit by any improper handling or delays, if the jury found they were shipped, billed and routed pursuant to the directions of defendant's agent, and might have gone further and refused a recovery for damage suffered in transit regardless of whether they were billed and shipped according to such directions, because no ground of recovery of that kind was declared on in the answer, and by the theory of the answer defendant must abide.

On account of errors in the instructions the judgment will be reversed and the cause remanded. All concur.