FRANK COPE et al., Respondents, v. C. E. THURSTON COMPANY, Appellant.

St. Louis Court of Appeals, April 5, 1910.

1. SALES: Contract: Construction. An order for a carload of lemons equal to those first ordered, which were "fancy lemons, Harbor Brand," would require the seller to furnish "fancy lemons, Harbor Brand," if none but that grade and brand would be equal to those first bought; but if standard lemons or any other variety were considered in the trade to be equal to "fancy lemons, Harbor Brand," the second order could be filled by sending lemons of a different variety.

2. ———: ———: Breach of Contract: Market Value: Evidence. In an action for breach of a contract to sell lemons of a designated quality at Topeka, Kansas, a book of original entries showing sales at auction of lemons in the city of St. Louis was not competent evidence, since lemons were proved to have had a definite market value in Topeka around the dates of the purchase and it was therefore not necessary to go to another market to ascertain their value.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED AND REMANDED.

*Joseph A. Wright* for appellant.

(1) The court erred in giving instruction No. 2. on the second count. The contract for the second car only required the lemons to be equal to the first car. while the instruction required them to be fancy lemons. the fancy lemons of various packers and localities varying both in quality and price. Instruction No. 3 is open to the same objection. 2 Mechem on Sales, par. 1337, 1338 and 1339; Alvin Fruit & Truck Assn. v. Hartman, 123 S. W. 957; DeWitt v. Berry, 134 U. S. 306; Sweat v. Shumway, 102 Mass. 365. (2) The court erred in rejecting evidence of sales at auction in St. Louis for the period in question, and in rejecting evidence that the freight rate was the same to both St. Louis and Topeka. 16 Enc., 1143-1145; 2 Wharton on Evi., par. 1290; Sinclair v. Railroad, 70 Mo. App. 588; Jones v. Railroad, 53 Ark. 27; Cohen v. Platt, 69 N. Y. 348; Harris v. Railroad, 58 N. Y. 660.

*Benj. J. Klene* for respondents.

1. The instructions 2 and 3 fairly presented to the jury the plaintiffs' theory of the case, to-wit: That the plaintiffs purchased "choice" lemons, and that defendant delivered instead an inferior grade of lemons, to-wit, "standard" lemons, and stated a correct interpretation of the contract. Fruit & Truck Assn. v. Hartman, 123 S. W. 957. 2. It is the general rule in a suit for the breach of a warranty, that the measure of damage is the difference between the contract price and the value of the goods actually delivered at the place of delivery, to-wit, Topeka, at or about the time of the delivery. Buffington v. Railroad, 118 Mo. App.

480; Davis v. Railroad, 122 Mo. App. 644; Andrews v. Schreiber, 93 Fed. 367; Miles v. Withers, 76 Mo. App. 91; Brown v. Emerson, 66 Mo. App. 63; Hayner v. Churchill, 29 Mo. App. 676; Brockhaus v. Schilling, 52 Mo. App. 73; Bank v. Crocker, 111 Mass. 166; Erwin v. Harris, 87 Ga. 333; Ramish v. Kirschbaum, 109 Cal. 659. 3. The contract was to sell "fancy lemons" and was a warranty of their quality, and to furnish "standards" instead was a breach of such warranty. Fruit & Truck Assn. v. Hartman, 123 S. W. 957.

GOODE, J.—Through C. W. Page, a broker in Topeka, Kansas, plaintiffs, who are fruit dealers in said city, purchased on April 24, 1907, of defendants, who are fruit dealers in Riverside, California, a carload of lemons. The purchase was made upon the following telegram sent by defendants to Page and submitted by him to plaintiffs:

"Riverside, Calif., April 24, 1907.

"We quote for spot cash subject to being unsold; car shipped 23rd; Fancy Lemons Harbor Brand, 30 boxes 240s; 305 boxes 300s, 75 boxes 360s, $3.35 per box; discount on 240s, 25 cents. Wire quick if wanted, others figuring on it.

"C. A. THURSTON COMPANY."

Plaintiffs agreed to buy a carload of lemons on the terms of that offer and Page transmitted this message to defendants:

"Topeka, Kansas, April 24, 1907.

"C. E. Thurston Company, Riverside, Calif.

"Answering your wire of to-day Cope accept lemons 3.35. Will wire bank guarantee when confirmed.

"C. W. PAGE."

The next day, April 25, 1907, Page sent the following telegram to defendants pursuant to an order given by plaintiffs for another carload of lemons:

"C. E. Thurston Company, Riverside, Calif.

"Cope offers $3.35 car lemons equal car bought spot cash we advise shipping ventilation.

"C. W. PAGE."

One of the plaintiffs testified he heard Page read that telegram and instructed him to send it as it was written. Two carloads of lemons were shipped by defendants to plaintiffs to fill the orders shown supra and plaintiffs received the fruit, but claimed it was not up to contract and filed a petition in two counts for damages sustained in consequence of defendants having shipped lemons of an inferior quality. We are not concerned on the appeal with the claim for damages because of the supposed inferiority of the first carload, but only with the controversy over the second one ordered April 25th. The testimony goes to show lemons are grown nowhere in this country but California and the dealers in that state sell different varieties under different brands with distinctive names to each brand; these names represent the brands put up by the various lemon growers, are well known to the trade throughout the country, and a fruit dealer can tell from the name of the brand what dealer grew the lemons and what qualities those called for by a brand ought to show. The various grades on the market are standard, choice, extra choice, fancy and extra fancy. An extra fancy lemon is a perfect lemon, or nearly so; fancy lemons are not quite so perfect as extra fancy, but almost equal to them; choice are a little lower grade, perhaps some scars on them; standards are a lower grade, green and scarred and not of good size or keeping quality, as some of the witnesses testified. It will be perceived the lemons offered by defendants in the first telegram were fancy lemons, Harbor Brand, and it appears Harbor Brand is the distinctive appellation of one grade of lemons grown and sold by defendants. The testimony for plaintiffs is that lemons shipped pursuant to the second order were not fancy lemons of the Harbor Brand, but standard lemons of the Royal Blue

Brand, another brand of lemons sold by defendants. The demand was large in Topeka for fancy lemons, but very poor for standard lemons, and the difference in the prices of the two grades in Topeka ran from fifty cents to a dollar a box. There was testimony the price of lemons in Topeka advanced after the middle of April for about thirty days. Testimony was given for defendants to prove Harbor Brand and Royal Blue Brand were "fancy" lemons, and one or more witnesses said the Royal Blue Brand was classed as "extra fancy." In truth there was no uniformity in the testimony of the experts about these matters. There was testimony to show Harbor Brand meant the same thing as "orchard run," and orchard run meant lemons just as they ran from the orchard with the culls taken out, while Royal Blue Brand had many extra fancy lemons. The object of the testimony for defendant was to prove the lemons shipped to plaintiffs pursuant to the second order, though not of the Harbor Brand variety, were "fancy" lemons and equal to Harbor Brand fancy, which was the quality prescribed in the first telegram; that hence the second order, which called for lemons equal to those called for in the first order, was duly filled by defendants. One witness said the Royal Blue Brand averaged about the same as Harbor Brand. This witness said Royal Blue was known simply as a brand and not as orchard run; meaning, we suppose, it did not signify lemons as they came from the orchard without culls being taken out, the lack of culling being, as another witness said, characteristic of orchard run lemons. Some witnesses for defendant testified, in contradiction of those for plaintiff, the market for lemons declined from the middle of April for thirty days. Defendants identified by a witness the record of sales of cars of lemons "in the American Central Fruit Auction in St. Louis from April 1, 1907 to October 5, 1907," from the original book of entries showing the actual report of cars and

the prices received for such cars at auction. The witness had made a list of sales of fruit, giving the same quality and character of the fruit here in question from April 22 to May 21, 1907. He was asked the sale price of Harbor Brand lemons on April 22, 1907, as shown by the aforesaid books of original entries. This really was an offer to prove the sale price of those lemons in St. Louis during that period and the court excluded the evidence, defendant taking an exception to the ruling. The exclusion of this evidence is assigned for error, as is also an instruction granted for plaintiffs which told the jury if they found from the evidence plaintiffs had bought of defendants the carload of fancy lemons mentioned in the second count of the petition, plaintiffs had paid for said lemons so bought, and the lemons actually shipped by defendants were not fancy lemons, but were of an inferior grade, that plaintiffs received the same and objected to the quality and grade of the lemons three days later, the verdict should be for plaintiffs on the second count of the petition in such sum, not exceeding $450, as the jury might find from the evidence was the difference in the value at Topeka, Kansas, of fancy lemons and those actually delivered to plaintiffs. The verdict was for plaintiffs on the second count in the sum of $325.

We can hardly surmise what the truth of this case is in view of the conflicting testimony of the dealers in lemons, or see how the jury could, so chaotic are the conclusions to be drawn from the testimony of those experts. We understand the theory of plaintiffs to be that each packer in California had his own trade names, like Royal Blue and Harbor Brand, for lemons grown or packed by him, but the classes or grades of lemons, extra fancy, fancy, choice, standard and orchard run, were uniform among the packers and signified the same quality of fruit, no matter what brand it bore. On this theory there would be extra fancy,

fancy, choice, standard, orchard run and other grades of Harbor Brand, Royal Blue, Windemere and other brands used by packers. If all the testimony went to prove this was true, the conclusion would follow that the order first given by plaintiffs pursuant to the proposal submitted to them for "fancy lemons, Harbor Brand," could not be duplicated by sending "standard lemons Harbor Brand," or "orchard run lemons, Harbor Brand," but might be duplicated by sending, say, "fancy lemons, Royal Blue Brand," or "fancy lemons Windemere Brand," or "fancy" lemons of any brand. That is to say, if lemons were graded the same way in all the brands, the second carload might satisfy the order for lemons equal to those first ordered though some other brand was substituted for Harbor. But the witnesses for defendants cast doubt on this view of the case; for parts of their testimony tended to prove the names applied to the different classes of lemons, such as standard, fancy, extra fancy, etc., did not signify the quality of the fruit and that a standard lemon of some brands was as good as a fancy lemon of other brands. It will be observed the second order did not mention the brand of lemons first bought, but only called for lemons equal to those first bought. Hence we must hold the court erred in submitting to the jury the question whether plaintiffs ordered "fancy lemons" for the second carload. The telegram was not ambiguous but stated an order for lemons equal to those first ordered, which were fancy lemons, Harbor Brand. If none but "fancy lemons" would be equal, then defendants were bound to furnish that grade, and if none but "fancy lemons, Harbor Brand" would be equal, defendants were bound to furnish that grade and brand. But if standard lemons or any other variety were considered in the trade to be equal to "fancy lemons, Harbor Brand," the second order could be filled by sending lemons of a different variety. The jury had the task of ascertaining from the evidence, as best they

could, what lemons would satisfy the terms of the second order. This case is unlike Alvin, etc., Co. v. Hart, 123 S. W. 957, wherein it appeared the defendant had ordered fancy Klondike strawberries, and it was held as he had ordered a certain variety, plaintiff had no right to substitute some other variety, because it was as good a berry. In the present case plaintiffs had not ordered a certain variety of lemons, at least had not done so expressly.

We hold the court did not err in excluding the book of original entries showing sales at auction of lemons in the American Central Fruit Auction from April 1, 1907 to October 5, 1907. Lemons were proved to have a definite market value in Topeka, Kansas, around the dates of defendants' purchases, and it was not necessary to go to another market to ascertain their value. [Davis v. Railroad, 122 Mo. App. loc. cit. 644, 90 S. W. 17.] Market conditions might have been very different in St. Louis and have made prices there no criterion of what they were in a place as far distant as Topeka. And especially would sales at auction in St. Louis have too remote a bearing on the issue of market value in Topeka to be admissible.

The judgment is reversed and the cause remanded. All concur.